```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT


_____
UNITED STATES OF AMERICA,      )
               Plaintiff,      ) No: 3:19-CR-0048 (KAD)
                               )
     v.                        ) October 18, 2019
DANIEL JIMENEZ DE LA CRUZ,     )
               Defendant.      ) 11:22 a.m.
_____)
                                 Brien McMahon Federal Building
                                 915 Lafayette Boulevard
                                 Bridgeport, CT 06604



                   IN-PERSON STATUS CONFERENCE

B E F O R E:
       THE HONORABLE KARI A. DOOLEY, U.S.D.J.


A P P E A R A N C E S:
For the Government:
     JOHN TROWBRIDGE PIERPONT, AUSA
     U.S. Attorney's Office
     157 Church Street, 25th Floor
     New Haven, CT 06510
     203-821-3735
     Email: john.pierpont@usdoj.gov

For the Defendant:
     TRACY HAYES, ESQ.
     Federal Public Defender's Office - NH
     265 Church Street, Suite 702
     New Haven, CT 06510-7005
     203-498-4200
     Email: tracy_hayes@fd.org




Courtroom Deputy:                    Official Court Reporter:
Kristen Gould, Esq.                  Tracy L. Gow, RPR
                                     203.910.0323

                    Chambers: 203.579.5522
```

```
 1                   (Call to Order, 11:22 a.m.)
 2              COURTROOM DEPUTY:  Please be seated.
 3              THE COURT:  Good morning, everybody.
 4              ALL:  Good morning, Your Honor.
 5              THE COURT:  This is the matter of United States v.
 6   Daniel Jimenez De La Cruz.  Counsel, please identify
 7   yourselves for the record.
 8              MR. PIERPONT:  Assistant United States Attorney John
 9   Pierpont on behalf of the Government.  Good morning, Your
10   Honor.
11              THE COURT:  Good morning.
12              MR. HAYES:  Tracy Hayes on behalf of Daniel De La
13   Cruz Jimenez.
14              THE COURT:  Did I get that backwards?
15              MR. HAYES:  No, Your Honor.  And, actually, I just
16   -- no, not at all, you did not.  I always just call him
17   Daniel Jimenez, so in my head I had to think about his full
18   name.
19              THE COURT:  All right.  And I will also ask -- good
20   morning, ma'am.
21              THE INTERPRETER:  Good morning, Your Honor.
22              THE COURT:  I'll ask the interpreter to please place
23   her name on the record.
24              THE INTERPRETER:  I am Sonia Berah, Spanish
25   interpreter.
```

1    THE COURT:  And, Ms. Berah, have you had any
2    problems communicating with the Defendant this morning?
3    THE INTERPRETER:  No, ma'am.
4    THE COURT:  All right.  I'm going to ask the Clerk
5    of the Court to place you under oath.
6    THE INTERPRETER:  Thank you.
7    THE COURT:  Madam Clerk, if you would.
8    (SONIA BERAH, Interpreter, sworn.)
9    THE INTERPRETER:  I do.
10   COURTROOM DEPUTY:  Thank you.
11   THE COURT:  All right.  Good morning, Mr. Jimenez.
12   THE DEFENDANT:  Good morning.
13   THE COURT:  All right.  Why don't I ask everybody to
14   have a seat.
15   MR. HAYES:  Thank you.
16   THE COURT:  All right.  Previously, on June 12th of
17   this year, the Defendant pled guilty to three counts,
18   pursuant to a plea agreement entered into with the
19   Government.  The Court conducted a canvass pursuant to Rule
20   11 and accepted those pleas at that time.  Following the
21   entry of the plea but prior to sentencing, it became apparent
22   that there was a significant discrepancy between the
23   anticipated Guideline range in plea agreement and the
24   Guideline range that would be applicable at the time of
25   sentencing.  And that discrepancy was borne of a

1  misapprehension as to the impact of the plea to a Title 18
2  U.S.C. Section 924(c), which carries with it a five-year
3  mandatory minimum period of incarceration and a period of
4  incarceration that must be imposed consecutive to the
5  underlying narcotics trafficking count.
6         As a result, the imposition of the five years
7  consecutive to the sentence imposed on the narcotics
8  trafficking count really altered the landscape, in terms of
9  what Mr. Jimenez understood with respect to his sentence and
10 his exposure.
11        The Court continued sentencing at the urging of the
12 parties, to allow them to discuss and perhaps address this
13 issue.  They then proposed a supplement to the plea agreement
14 that would have, in large measure, asked the Court to honor
15 the Guideline range and the potential sentence that was
16 contained in the original plea agreement, and I don't have
17 any opinion, and nor should anything I say be construed as an
18 assessment of that proposed fix to the situation that
19 developed following the plea.
20        But as the series of events unfolded, the Court had
21 concerns about whether or not it had adequately appreciated
22 the Defendant's exposure at the time of the plea and whether,
23 frankly, I had accurately communicated that to the Defendant,
24 as is my obligation under Rule 11.  So I obtained a
25 transcript -- not the official transcript, but I asked for a

1  rough transcript of the plea hearing to see whether or not
2  the Court had met its obligations under Rule 11, and I
3  decided that I did not.
4          With respect to the -- well, let me back up.
5          The Court is required, and the Second Circuit has
6  held on multiple occasions, that district judges must
7  strictly adhere to the requirements of Rule 11 in order to
8  ensure that guilty pleas are voluntary.  And under *United
9  States v. Rossillo*, among other cases -- and that's at 853
10 F2d 1062 -- the Second Circuit has reiterated that Rule 11
11 does not require slavish adherence to the precise wording of
12 the criminal statute, but it does require that the Court
13 review the detailed elements, and must cover, in detail, the
14 elements of each offense during a plea allocution.
15         The Defendant's plea included a plea to a violation
16 of 922(g)(5)(A), which is the knowing possession of a firearm
17 by a person illegally -- by an alien, sorry -- illegally in
18 the United States.
19         The plea agreement did not include one of the
20 elements of that offense -- and that is, that the possession
21 of the firearm was in and affecting commerce, nor did the
22 Court during the Rule 11 canvass identify that as an element
23 of this offense, and the prosecution -- for the record, it's
24 not the prosecution's obligation, but nor did the prosecution
25 identify this element of the 922(g) count, and that's Count

1  Three of the Indictment.
2          In addition, with respect to Count Two, the Court
3  did advise Mr. Jimenez that the 924(c) count requires a
4  mandatory minimum period of incarceration of five years.
5  What the Court did not do, however, was advise him that that
6  five years must be imposed to run consecutive to his sentence
7  on Count One.
8          And, again, the case law is very, very clear that
9  the Court must advise a Defendant as to not only his maximum
10 exposure but any minimum exposure, in terms of both
11 incarceration and fines.
12         And while I don't think that there was anything
13 technically inaccurate in what the Court said, I think in not
14 advising him that the count has to run consecutive to the
15 sentence imposed in Count One, I fell short of my obligations
16 under Rule 11.
17         I did look at the Government's and the Defendant's
18 proposed supplement or amendment to the plea agreement, but I
19 am not satisfied that it adequately addresses the
20 deficiencies that I've just outlined for the record.
21         I scheduled a telephonic conference for last week.
22 Nothing of substance was discussed except that I did want to
23 put the parties on notice that, absent their explaining to me
24 why I shouldn't, I was going to be, *sua sponte*, vacating Mr.
25 Jimenez's guilty pleas and placing the case back on the

1  pretrial docket, scheduling the matter for jury selection
2  and, essentially, putting the parties back in the position
3  they were in immediately following the Indictment with the
4  full panoply of options available to them to try to resolve
5  the case or try the case.  But I could not, I don't think in
6  good conscience, let those pleas stand.
7            Does the Government have any -- does the Government
8  disagree or wish to make any kind of record, in terms of the
9  procedural posture of the case or the Court's ruling?
10           MR. PIERPONT:  No, Your Honor.  The Government has
11 no objection and does not disagree with the Court's proposed
12 course of action.  I would add, as well, that the *Rehaif*
13 decision was decided in this interim, as well, and there was
14 an added element there that I think was adequately covered by
15 the initial plea, but the plea supplement tried to address
16 that, as well.  It's another complication, I guess would be
17 another way of putting it.  So I put that on the record, as
18 well.
19           I think putting us back where we were makes perfect
20 sense.  You know, I think I would ask Your Honor just to make
21 sure that Mr. Jimenez is aware that he could proceed to trial
22 if he wanted to.  I know you just did that, but explain
23 explicitly that this really does go all the way back to
24 however he wants to proceed, if he wants to go to jury trial,
25 that's all within his rights to do that at this time, and

1  nothing that has happened thus far would be held against him
2  if he were to exercise those rights.  But, otherwise, the
3  Government has no objection.
4          THE COURT:  Thank you, Mr. Pierpont.
5      Mr. Hayes.
6          MR. HAYES:  Your Honor, I don't have any concerns.
7  I don't believe that Mr. Jimenez does.  I know that he wants
8  to resolve his matter, which is what he talks about mostly.
9          Other than that, if the Court wishes to advise him
10 again about his right to trial or resolving otherwise, that's
11 fine.
12         THE COURT:  Okay.
13         MR. HAYES:  Thank you.
14         THE COURT:  Thank you.  All right.  Mr. Jimenez, I'm
15 just going to take a moment to try to explain to you a little
16 bit about what I've done and why I've done it.
17         Let me start by saying that nothing I've done here
18 this morning impacts your ability to make decisions about how
19 this case proceeds.  If you want to resolve the case without
20 a trial, I haven't done anything to preclude you from doing
21 that.  My concern was that the agreements that were entered
22 into had some inaccuracies in them, and I also didn't
23 adequately explain things to you when I accepted your guilty
24 plea.
25         So I'm sending you back to square one with all of

1   the rights that you had at the time you were indicted, and
2   I'm reinstating your "not guilty" plea, and I'm going to put
3   the case on the jury docket.
4           You may go to trial, fully protected by your
5   constitutional rights, and nothing that has happened in this
6   process will be used against you or can be used against you.
7   Or you can continue to work with Mr. Hayes in trying to
8   resolve the matter.  I don't have an opinion as to which
9   choice you should make.  I just know that, in protecting your
10  constitutional rights, those choices have to be yours to make
11  at this point going forward.
12          Do you have any questions for me, sir?
13          THE DEFENDANT:  No.  Thank you.
14          THE COURT:  Okay.  Let me ask Attorney Gould what my
15  next available jury selection is.
16          COURTROOM DEPUTY:  November 5.
17          THE COURT:  Okay.  I assume November 5th may be
18  short notice, Mr. Hayes?
19          MR. HAYES:  It is, Your Honor.
20          THE COURT:  Okay.  So we will --
21          COURTROOM DEPUTY:  December 3rd.
22          THE COURT:  All right.  So we'll set the case down
23  for jury selection on December 3rd.  And in light of the
24  procedural posture of the case, I will exclude, for speedy
25  trial purposes, the time between November 5th and December

1   3rd, and I think the time from the date of the guilty plea to
2   today is also excludable under the rather unique
3   circumstances of this case.
4            And obviously, counsel, if you need anything from
5   chambers, we will make ourselves available.  Anything else we
6   can do this morning?
7            MR. HAYES:  No, Your Honor.  Thank you.
8            MR. PIERPONT:  No, Your Honor.  Thank you.
9            THE COURT:  Okay.  We're in recess.
10           (Proceedings concluded, 11:37 a.m.)
11
12           COURT REPORTER'S TRANSCRIPT CERTIFICATE
13  I hereby certify that the within and foregoing is a true and
14  correct transcript taken of the proceedings in the
15  above-entitled matter.
16
17                           /s/   Tracy L. Gow
                             Tracy L. Gow, RPR
18                           Official Court Reporter
19
20
21
22
23
24
25