1

```
 1  UNITED STATES DISTRICT COURT

 2  DISTRICT OF CONNECTICUT

 3

    UNITED STATES OF AMERICA,    )
 4              Plaintiff,       )    NO: 3:18MJ1473(RMS)
                                 )
 5  vs.                          )
                                 )    September 20, 2018
 6  DANIEL JIMENEZ DE LA CRUZ,   )
                Defendant.       )    Initial Appearance &
 7  _____      Detention Hearing

 8
                              141 Church Street
 9                         New Haven, Connecticut

10  B E F O R E:
            THE HONORABLE ROBERT M. SPECTOR, U.S.M.J
11
    A P P E A R A N C E S:
12
    For the Plaintiff :         JOHN TROWBRIDGE PIERPONT, AUSA
13                              United States Attorney's Office
                                157 Church Street, 25th Floor
14                              New Haven, CT 06510

15  For the Defendant:          TRACY HAYES, ESQUIRE
                                Federal Public Defender's Office
16                              265 Church Street, Suite 702
                                New Haven, CT 06510
17

18

19

20

21

22

23
    Transcriber:                Martha C. Marshall, RMR, CRR
24

25  Proceedings recorded by electronic sound recording,
    transcript produced by transcription service.
```

1          THE COURT:  Good afternoon.  You may be seated.
2          MR. PIERPONT:  Good afternoon, Your Honor.
3          THE COURT:  We're here in the case of the United
4   States of America versus Daniel Jimenez De La Cruz, no case
5   number yet assigned.
6          Can I please have appearances of counsel and anyone
7   seated with you at counsel table.
8          MR. PIERPONT:  Good afternoon, Your Honor.
9   Assistant United States Attorney John Pierpont on behalf of
10  the United States.  Joining me at counsel table are DEA
11  Agents James Kastamenti (ph) and Kevin Zen (ph).
12         THE COURT:  Good afternoon.
13         MR. HAYES:  Good afternoon, Your Honor.  Tracy
14  Hayes on behalf of Mr. Daniel Jimenez De La Cruz.
15         THE COURT:  Go ahead.
16         MR. HAYES:  That's it.  Thank you, Your Honor.
17  That's it.
18         THE COURT:  Good afternoon.
19         Good afternoon, Mr. Jimenez De La Cruz.  You may be
20  seated.
21         And, Mr. Pierpont, before we start, can you just
22  tell me the circumstances, you know, when was Mr. De La Cruz
23  arrested?
24         MR. PIERPONT:  Your Honor, earlier today the
25  Government had sought a search warrant for an address that

1  was Mr. Jimenez De La Cruz's address.  That search warrant
2  was executed in the morning, at 11:00 in the morning.  Soon
3  thereafter, Your Honor, as described in the affidavit, there
4  was fentanyl and a loaded revolver was found there.  Within,
5  I would say, about an hour after that, Your Honor, our office
6  authorized a warrantless arrest around noon or thereabouts of
7  Mr. Jimenez De La Cruz based on what we found there.  And
8  then a few moments ago, Your Honor, we brought the affidavit
9  to Your Honor and swore it out, and there's a criminal
10 complaint as well.
11            THE COURT:  Thank you very much.
12            And so what the Government is saying, Mr. De La
13 Cruz, is that you were arrested without a warrant, which is a
14 way -- a perfectly legitimate way for a case to start in
15 Federal Court.  And then a complaint was signed before they
16 came into court.  You should probably, I would hope, have a
17 copy of that in front of you.
18            And we're here to make sure that you understand your
19 rights, that you have the right to counsel, and that we
20 appoint counsel for you to consider the issue of detention or
21 release and to set a preliminary schedule for the case.
22 Okay.
23            So let me just start by telling you that you have
24 the right to remain silent, which means you're not required
25 to make a statement, any statement to anyone about this case.

1    If you've already made a statement, you do not need to
2    continue.  If you start making a statement, you can stop at
3    any time.  And if you choose to make a statement, you have
4    the right to have an attorney with you.  Do you understand
5    that?
6            THE DEFENDANT:  Yes.
7            THE COURT:  Okay.  And if you choose to make a
8    statement, you should know that anything you say can and
9    probably will be used against you either in this case or in
10   any other case.  Do you understand that?
11           THE DEFENDANT:  Yes, yes.
12           THE COURT:  You also have the right to be
13   represented by counsel at every stage of these proceedings.
14           Mr. Hayes, do you expect that the defendant will
15   qualify for appointed counsel?
16           MR. HAYES:  I do, Your Honor.  I just wanted to
17   point out this concern.  I do.  We started to complete a
18   financial affidavit.  Mr. De La Curz, English is what would
19   be a second language.  So there was somewhat of a language
20   barrier.  So I keep asking if he understands the Court today.
21   He indicates that he does.  So I will complete one once I
22   have the opportunity to at least make sure that he
23   understands what I'm asking.
24           THE COURT:  Sure.  That's not a problem.
25           MR. HAYES:  Thank you, Your Honor.

1  THE COURT: Mr. De La Cruz, do you feel like you can
2  understand me?
3  THE DEFENDANT: Yeah, I understand.
4  THE COURT: Okay. So what I'm going to do, based on
5  Mr. Hayes' representations, is I'm going to appoint him to
6  represent you in this case, conditional on you filling out
7  this form. It's a financial affidavit. I'm going to give
8  you a week to do that. Okay. So as long as you get it filed
9  by September 27th. It will be filed under seal. And then we
10 can issue, you know, a formal order. But he will be
11 appointed to represent you.
12        And you're entitled to counsel at every stage of
13 these proceedings. So if for some reason he's unable to
14 represent you in the future, the Court will make sure to find
15 new counsel for you. Okay?
16 THE DEFENDANT: Thank you.
17 THE COURT: Is Mr. De La Cruz a citizen of any other
18 country? Do we have to deal with consulate notification
19 here?
20 MR. PIERPONT: So, Your Honor, the Government
21 understands that Mr. De La Cruz is a citizen of the Dominican
22 Republic.
23 THE COURT: Okay.
24 MR. PIERPONT: The Dominican Republic, the
25 Government's understanding, is not a mandatory notification

1    country.  But, of course, consistent with the rules, the
2    Government would be happy to notify the consulate of the
3    Dominican Republic on Mr. Jimenez De La Cruz's behalf if he
4    so chooses.
5             THE COURT:  Thank you very much, Mr. Pierpont.
6             So what that means is that because you are a citizen
7    of the Dominican Republic, I need to advise you that you have
8    the right to ask the Government to notify the consulate of
9    your country of citizenship regarding your advise.  Okay?
10   I'm sorry, regarding your arrest.  You should discuss that
11   matter with Mr. Hayes to decide if that's something you want
12   to do.  Okay?
13            THE DEFENDANT:  Yes, sir.
14            THE COURT:  Okay.  Thank you.
15            So, as you know, you have been charged in a criminal
16   complaint.  The criminal complaint charges that on or about
17   September 20th, 2018, you -- that you essentially did two
18   things.  One is that you possessed with the intent to
19   distribute a mixture and substance containing a detectable
20   amount of fentanyl, in violation of Title 21 U.S. Code
21   Sections 841(a)(1) and 841(b)(1)(C).  And the next is that as
22   in what's referred as an alien illegally or unlawfully in the
23   United States, you were in possession of a firearm, which
24   meant had been shipped or transported in interstate or
25   foreign commerce, in violation of Title 18 U.S. Code Section

1   922(g)(5)(A).

2           I'm going to ask you a couple of questions, Mr. De
3   La Cruz, to make sure we're understanding each other.  These
4   are very basic questions.

5           Can you tell me how old you are?

6           THE DEFENDANT:  31.

7           THE COURT:  31.  Okay.

8           And how far have you gone in school?

9           THE DEFENDANT:  I never graduate.  I just go through
10  2nd -- 7 in DR.  I never go to school here.

11          THE COURT:  So you didn't go to school in the United
12  States.  You went to school in the Dominican Republic, but
13  you didn't graduate.

14          THE DEFENDANT:  Yes.

15          THE COURT:  What you're referring to is like a
16  secondary school, like a high school?

17          THE DEFENDANT:  No, I never go to the high school.

18          MR. HAYES:  He's not been to high school, Your
19  Honor.

20          THE COURT:  Okay.  Have you taken any medication,
21  drugs, or alcohol in the last 24 hours that is making it
22  difficult for you to understand what's going on today?

23          THE DEFENDANT:  No, no, no.  I never used drugs.

24          THE COURT:  Do you feel like you have a clear head
25  today?

1          THE DEFENDANT:  Yeah.
2          THE COURT:  Are you having any trouble understanding
3  me?
4          THE DEFENDANT:  No.
5          THE COURT:  Mr. Hayes, have you been able to
6  communicate with Mr. De La Cruz over the last, you know, hour
7  or so that you've met him?
8          MR. HAYES:  I have, Your Honor.
9          THE COURT:  Is that fair to say, that you've
10 probably only met him about less than an hour ago?
11         MR. HAYES:  That's correct, Your Honor.
12         THE COURT:  I'm going to ask you to be seated now,
13 Mr. De La Cruz.  I'm going to ask Mr. Pierpont to summarize
14 the maximum possible sentence that you face if you were,
15 first, indicted, and then convicted on the charges in the
16 complaint.
17         MR. PIERPONT:  Thank you, Your Honor.
18         With respect to the violation of Title 21 United
19 States Code Sections 841(a)(1) and 841(b)(1)(C), that's the
20 possession with intent to distribute a mixture and substance
21 containing a detectable amount of fentanyl, the maximum
22 penalties that Mr. Jimenez De La Cruz could face would be 20
23 year term of imprisonment, a one million dollar fine, three
24 years to life for supervised release, and $100 special
25 assessment.

1		With respect to the violation of -- the alleged
2	violation of 18 United States Code Section 922(g)(5)(A), that
3	is, the alien illegally or unlawfully in the United States in
4	possession of a firearm which has been shipped or transported
5	in interstate or foreign commerce, the maximum penalties
6	there are 10 years of imprisonment, a $250,000 fine, up to a
7	term of three years of supervised release, and a $100 special
8	assessment.
9		Your Honor, at this time the Government is not aware
10	of any restitution issue, but restitution could, of course,
11	be ordered if victims are identified and restitution would be
12	appropriate.
13		THE COURT:  Thank you.
14		Mr. De La Cruz, did you understand those penalties?
15		THE DEFENDANT:  Yes.
16		THE COURT:  So as we talked about, you're charged in
17	a criminal complaint, which is a perfectly normal and
18	appropriate way for a criminal case to begin in Federal
19	Court, but because these are felony charges we do need to set
20	a date for what we call probable cause hearing, because you
21	have a right to have that hearing unless an indictment is
22	returned.  And so that hearing we typically will set either
23	14 days or 21 days from today, depending on if you're
24	detained.  So I'm going to wait on the date for the hearing,
25	but we'll set that date before the end of today's hearing.

1           We rarely go forward on probable cause hearings
2    either because you and your attorney want more time to look
3    over the charges or because the Government goes to a Grand
4    Jury and gets an indictment against you.  In either of those
5    scenarios, it would be totally unnecessary to have the
6    probable cause hearing.  Okay?
7           THE DEFENDANT:  Yes, sir.
8           THE COURT:  So I'm going to turn now to the issue of
9    detention or release and ask the Government what its position
10   is.
11          MR. PIERPONT:  Your Honor, the Government would seek
12   detention of Mr. Jimenez De La Cruz.  I haven't had the
13   opportunity to speak to defense counsel about this.  I don't
14   know what his position.  I can give the proffer now if you
15   like or however Your Honor would like to proceed.
16          THE COURT:  Well, what I'll note for the record that
17   I have a written detention motion from the Government which
18   indicates a few things.
19          First, that the case qualifies because he's charged
20   with a controlled substance offense.  And, also, that the
21   rebuttable presumption applies for that same reason he's
22   charged with an offense which carries a maximum term of
23   imprisonment of 10 years or greater under the Controlled
24   Substances Act.  And the Government's asking for a
25   continuance of three days.

1    So I think the Goverment is entitled to do this.
2    What I'd like to do is turn to Mr. Hayes and ask whether he
3    agrees that the rebuttable presumption applies and will agree
4    that we should set a hearing down for sometime next week.
5            MR. HAYES:  Thank you, Your Honor.
6            I do agree that the rebuttable presumption does
7    apply here.  I would ask if we may have a hearing next week.
8    Your Honor, also, I did want to hear what the Government
9    would have proffered today, but I could talk to Mr. Pierpont.
10           THE COURT:  Mr. Pierpont is free to -- why don't we
11   have him proffer.  He's here.  He's dressed up.  Let's hear
12   what he has to say.
13           MR. HAYES:  Thank you.
14           MR. PIERPONT:  Your Honor, I always look forward to
15   an opportunity to speak.
16           THE COURT:  So why don't you tell me why we should
17   be holding Mr. De La Cruz.
18           MR. PIERPONT:  So, Your Honor, again, I think you
19   laid out the rebuttable presumption here, but I think the
20   facts warrant review here as well.
21           First, in the Government's view, Mr. Jimenez De La
22   Cruz is a flight risk.  That comes from a couple of different
23   areas of information.  First of all, the Government
24   understands that Mr. Jimenez De La Cruz is not here legally.
25   He does not have papers that justifies his presence here in

1  the country.  This was both through conversations that agents
2  have had with other HSI agents who have verified that.  And,
3  in fact, Mr. Jimenez De La Cruz was asked that after he was
4  Mirandized during the search warrant that I spoke about
5  earlier and said directly to the agents that he was not here
6  legally.
7  　　　　　He's from the Dominican Republic.  He has been here
8  for seven years.  According to him, and what he told the
9  agents, he crossed over from Mexico.  He says as well, Your
10  Honor -- so beginning there with the fact that he's not a
11  citizen of the United States, we also -- there is a passport
12  for the Dominican Republic that we saw as well during the
13  search warrant.  So he certainly has the means to leave the
14  country.  He has a passport from the Dominican Republic.
15  　　　　　He also told agents that he does have a wife, but
16  that his wife is in Miami.  And so there's another pull not
17  only back to the Dominican Republic, Your Honor, but also to
18  Miami as well to the extent that he does have family here.
19  Again, he indicated that his wife was in Miami.
20  　　　　　So we don't see ties to the community that we would
21  normally see.  In fact, to the contrary.  What we see is
22  somebody who doesn't have ties to the community.  He did not
23  own the house in which he was living.  We understood that was
24  owned by another individual.
25  　　　　　I think Your Honor could take these facts and put up

1  against them the lengthy term of incarceration that I just
2  reviewed on the record with Your Honor.  There is a real risk
3  of flight here.  Again, coupled with the rebuttable
4  presumption as well, in the Government's view, there is a
5  risk of flight that no combination of conditions could
6  reasonably assure his appearance.  So that's risk of flight.
7          Turning now to the danger that he poses to the
8  community.  A couple of things to go through here, Your
9  Honor.  During the course of the search warrant that was
10 executed at Mr. Jimenez De La Cruz's residence earlier today,
11 a black trash bag that was right outside his bedroom window
12 that was sort of secreted underneath an old sink that was
13 leaned up against the house was found.  Within it was one
14 ounce or approximately one ounce.  So approximately 28 grams
15 of fentanyl.  Fentanyl, as Your Honor is aware, is an
16 extraordinarily dangerous drug.  And when you're talking
17 about 28 grams, you're talking about in the quantity that is
18 beyond just personal use.
19         In that brown plastic bag there was also sandwich
20 baggies that were found in connection with that, as well as
21 lactose -- lactase.  And lactase is a common substance that
22 is used to cut fentanyl, Your Honor.  And, in fact, when
23 asked after he was Mirandized what was the lactase there for,
24 it was there for, according to Mr. Jimenez De La Cruz, to cut
25 fentanyl.  He actually referred to it as white china.  And

1    the Government understands white china to mean fentanyl.
2            There was also a scale found --
3            THE COURT:  China white?
4            MR. PIERPONT:  China white.  I'm sorry.  China
5    white.
6            THE COURT:  That's okay.
7            MR. PIERPOINT:  There was also -- good correction.
8    There was also a scale found at the residence as well, Your
9    Honor.  And so what this indicates to the Government is
10   beyond just the single ounce of fentanyl, the 28 grams of
11   fentanyl that was found there, is that he is actually in the
12   business of selling fentanyl.  And that more likely than not,
13   there's been a lot more than just this one particular ounce
14   that was seized there.
15           The second fact that demonstrates, in the
16   Government's view, that Mr. Jimenez De La Cruz is a danger to
17   society is that there was a loaded revolver found in that bag
18   as well.  It's a Smith & Wesson, as alleged in the complaint,
19   that was manufactured, the Government understands, in
20   Massachusetts.  But Mr. Jimenez De La Cruz admitted that that
21   was his gun and also told agents that he bought it for $300
22   from an individual named Marino or Marrero -- Marino, who had
23   gotten it from North Carolina.  We're still tracking down the
24   circumstances of that.  But on its face, it does not appear
25   as though that was, say, a usual purchase of a gun.

1      So I think, Your Honor, if you take those two facts,
2 that there was fentanyl there, evidence that there was
3 probably a lot more that has been trafficked along the way,
4 and the fact that he had a loaded revolver with the fentanyl
5 in that brown plastic bag -- black plastic bag as well, in
6 the Government's view, he is, in fact, a danger to the
7 community and one that no combination of conditions could
8 reasonably assure that he be protected.
9      And so for those reasons, in connection with the
10 rebuttable presumption, the Government would ask that Mr.
11 Jimenez De La Cruz be detained.
12           THE COURT:  Thank you.
13           Mr. Hayes.
14           MR. HAYES:  Thank you, Your Honor.
15      I'm at least satisfied for today and I would ask for
16 a hearing before Your Honor next week.
17           THE COURT:  Sure.  Is there a particular day that
18 you're looking at?
19           MR. HAYES:  Your Honor, I would ask for even a week
20 from now, if the Court is available then, to give me enough
21 time to speak with Mr. Jimenez's family and to talk to Mr.
22 Jimenez as well.
23           THE COURT:  Sure.  Would 3:00 -- well, how about
24 2:30 on the 27th?  Would that work for both sides?
25           MR. PIERPONT:  That would work for the Government,

1  Your Honor.
2         MR. HAYES:  Yes, Your Honor.
3         THE COURT:  Okay.  So we'll set this down for a
4  detention hearing on Thursday, September 27th, at 2:30 in the
5  afternoon.
6         And I'll issue a written detention order today just
7  covering the fact that the rebuttable presumption applies and
8  scheduling this for the 27th.
9         MR. HAYES:  Thank you, Your Honor.
10        MR. PIERPONT:  Your Honor, just to be clear.  It's
11 not the Government's intention at this time to notify the
12 consulate office until I hear from Mr. Hayes that that is
13 something that his client would want us to do on his behalf.
14        THE COURT:  That's fine.  I leave that totally up to
15 the parties.
16        MR. HAYES:  Thank you, Your Honor.
17        THE COURT:  As long as Mr. De La Cruz understands
18 his rights.
19        I will set down the probable cause hearing for 14
20 days from today, which is Thursday, October 4th.  We'll set
21 it down for 9:30 in the morning.  Strike that.  We'll set it
22 down for 10:00 in the morning.
23        Like I said, Mr. De La Cruz, I would be shocked if
24 we actually go forward with that because we just rarely,
25 rarely do them in this district.  Either the Grand Jury

```
 1   deliberates and returns an indictment or you decide with your
 2   attorney that you want more time to consider your options and
 3   so you may move to continue.  But either way, for now your
 4   next court date will be September 27th, and then October 4th
 5   for the probable cause hearing.  Okay?
 6           THE DEFENDANT:  Yes, sir.
 7           THE COURT:  Thank you.
 8           And I will note that the complaint is not sealed.
 9   The complaint is an obtained affidavit.
10           Is there anything else we need to accomplish today?
11           MR. PIERPONT:  Not from the Government, Your Honor.
12           MR. HAYES:  No, Your Honor.  Thank you.
13           THE COURT:  And Probation?
14           MS. BLAKE:  No, Your Honor.  Thank you.
15           THE COURT:  Thank you.
16           We can stand in recess.  Wish y'all a pleasant
17   afternoon.
18           Thank you.
19           (Completed at 5:09, p.m.)
20
21
22
23
24
25
```

```
 1                        C E R T I F I C A T E

 2


 3           I, Martha C. Marshall, RMR, CRR, hereby certify that

 4   the foregoing pages are a complete and accurate transcription

 5   o the best of my ability of the electronic recording held in

 6   the matter of UNITED STATES V. DANIEL JIMENEZ DE LA CRUZ,

 7   which was held before the Honorable Robert M. Spector,

 8   U.S.M.J, at 141 Church Street, New Haven, Connecticut, on

 9   September 20, 2018.

10

11

12

13                                   /s/Martha C. Marshall
                                     Martha C. Marshall, RMR,CRR
14
```