```
 1   UNITED STATES DISTRICT COURT

 2   DISTRICT OF CONNECTICUT

 3
     UNITED STATES OF AMERICA,    )
 4                Plaintiff,      )    NO: 3:19CR48(KAD)
                                  )
 5   vs.                          )
                                  )    January 16, 2020
 6   DANIEL JIMENEZ DE LA CRUZ,   )
                  Defendant.      )    Frye Hearing
 7   _____ )

 8
                            141 Church Street
 9                       New Haven, Connecticut

10   B E F O R E:
             THE HONORABLE SARAH A. L. MERRIAM, U.S.M.J
11
     A P P E A R A N C E S:
12
     For the Plaintiff :        JOHN TROWBRIDGE PIERPONT, AUSA
13                              AMANDA S. OAKES, AUSUA
                                United States Attorney's Office
14                              157 Church Street, 25th Floor
                                New Haven, CT 06510
15
     For the Defendant:         TRACY HAYES, ESQUIRE
16                              Federal Public Defender's Office
                                265 Church Street, Suite 702
17                              New Haven, CT 06510

18

19

20

21

22

23
     Transcriber:               Martha C. Marshall, RMR, CRR
24

25   Proceedings recorded by electronic sound recording,
     transcript produced by transcription service.
```

 1          THE COURT:  Good morning, everybody.

 2          Please be seated.

 3          MR. PIERPONT:  Good morning, Your Honor.

 4          MR. HAYES:  Good morning, Your Honor.

 5          THE COURT:  We're here in the matter of the United

 6   States versus Daniel Jimenez De La Cruz, case number 19CR48,

 7   assigned to Judge Dooley.

 8          We have an interpreter with us.  I'll ask the

 9   interpreter to introduce herself for the record.

10          THE INTERPRETER:  Virginia Kulig.  Good morning,

11   Your Honor.

12          THE COURT:  Good morning.  And it appears that

13   you've had a chance to exchange a few words with Mr. Jimenez,

14   is that right?

15          THE INTERPRETER:  Yes, just a few words, Your Honor.

16          THE COURT:  Do you need additional time to confirm

17   that you two understand each other?

18          THE INTERPRETER:  No, Your Honor.  The interpreter

19   did ask Mr. Jimenez if he understood her and he said that he

20   did.

21          THE COURT:  All right.  Then we'll have the

22   interpreter sworn.

23          (Whereupon, the Interpreter, Virigina Kulig, was

24   sworn by the Clerk.)

25          THE COURT:  Thank you.

1          All right.  I'll take appearances, please, for the

2    record, beginning with the Government.

3          MR. PIERPONT:  Good morning, Your Honor.  Assistant

4    United States Attorney John Pierpont for the United States.

5    I'm joined at counsel table by AUSA Amanda Oakes as well.

6          THE COURT:  Good morning.

7          And for the defendant.

8          MR. HAYES:  Good morning, Your Honor.  Tracy Hayes

9    before Your Honor on behalf of Mr. Daniel Jimenez.

10         THE COURT:  Good morning, Mr. Hayes.

11         Good morning, Mr. Jimenez.

12         THE DEFENDANT:  Good morning.

13         THE COURT:  All right.  I have convened this hearing

14   at the request of Judge Dooley pursuant to two related cases.

15   Those cases are called *Missouri versus Frye* and *Lafler versus*

16   *Cooper*, and they are decisions of the Supreme Court.

17         So the Supreme Court said in *Frye* that plea bargains

18   have become so central to the criminal justice system that

19   defense lawyers have responsibilities in the plea negotiation

20   process that must be met in order to ensure a defendant has

21   received effective assistance of counsel under the 6th

22   Amendment.

23         In Federal Court, a defendant has no right to a Plea

24   Agreement, and has no right to require the Court to accept

25   any agreement.  But if a plea bargain is offered by the

1    Government, a defendant has a right to consider it and has

2    the right to effective assistance of counsel in deciding

3    whether to accept it.  So a defense lawyer has a duty to

4    convey any plea offer to the defendant, to make sure the

5    defendant understands the terms of any offer, and to explain

6    the offer to the defendant.

7         So we sometimes have these hearings just to make

8    sure that that process has happened.  So I'm going to ask the

9    lawyers some questions today.  I'll ask you some questions.

10   But I want to make it clear to you that the fact that we're

11   having this hearing doesn't suggest that the Court has any

12   interest in whether you take a Plea Agreement or don't.  In

13   Federal Court, judges have no involvement in the actual

14   negotiations between the parties.  My only job here today is

15   to make sure you've received the plea offer, that you've had

16   a chance to discuss it with your lawyer, and that you

17   understand it.  And then I'll ask you what your decision is.

18        The decision of whether to plead guilty or not

19   guilty is always yours and yours alone.

20        All right.  Do you understand that so far,

21   Mr. Jimenez?

22             THE DEFENDANT:  Yes, Your Honor.

23             THE COURT:  So the last version of a Plea Agreement

24   I have is a letter dated October 18th.  Is that the current

25   version, Mr. Pierpont?

1          MR. PIERPONT:  Yes, Your Honor.  To be clear, there
2     was another version where we changed the date to December 3rd
3     which was the date that Mr. Jimenez had asked for additional
4     time to consider it.  The substance is the exact same,
5     though.  We just changed the date to match with the time that
6     the court had convened, Judge Dooley had convened to accept a
7     guilty plea on that date.  Otherwise, the substance is the
8     same.
9          THE COURT:  All right.  So what's been provided to
10    me is a letter from Mr. Pierpont to Mr. Hayes which contains
11    a plea offer to Mr. Jimenez.
12          So, Mr. Pierpont, I'll ask you to describe the Plea
13    Agreement that you've proposed, and to let us know whether
14    the proposed agreement expires at any particular time.
15          And, Mr. Jimenez, I'll ask you to listen carefully.
16    If either Mr. Jimenez or the interpreter, if either of you
17    need to take a break or you need time to catch up or to ask
18    Mr. Hayes any questions, just let me know.
19          MR. PIERPONT:  Your Honor, before I begin going
20    through the Plea Agreement, I haven't had the -- haven't done
21    a *Frye* hearing with Your Honor before.  Do you want to go
22    through the indictment and what the charges are that are
23    there and penalties under the indictment or is your intention
24    only to go through the plea offer there?  And I ask because
25    in light of what the plea offer is offering here, compared to

1    what his exposure is, would be one of the areas that the

2    Government would ask the Court to inquire about in terms of

3    ensuring that Mr. Jimenez fully understands both the terms of

4    the Plea Agreement on his own and as compared to what his

5    potential exposure would be.

6            THE COURT:  I have re-read *Frye* in the last year or

7    so, not in anticipation of this hearing, but I view the

8    Court's role as ensuring that the Plea Agreement has been

9    conveyed and that the defendant has been given an opportunity

10   for effective assistance of counsel in considering it.  It is

11   not my practice to, as the court, review any claims by the

12   Government or belief by either party about the relevant

13   benefits of the Plea Agreement.  I think that invades the

14   province of the parties here.

15           I understand that it makes sense from your

16   perspective to describe the indictment before you describe

17   the plea.  Happy to have you do that sort of as we would at

18   an arraignment, to go through the indictment, the potential

19   penalties if Mr. Jimenez were to be convicted on the charges,

20   and then to review the Plea Agreement.

21           So I'm going to give you a little preview,

22   Mr. Jimenez, of the ultimate question I'm going to have for

23   you so you have it in mind as Mr. Pierpont describes the

24   situation.

25           So you have three basic options:

1              You can plead not guilty and have a trial;

2              You can plead guilty to the charges in the

3    indictment without any agreement with the Government; or

4              You can plead guilty to some or all of the charges

5    pursuant to an agreement with the Government.

6              So Mr. Pierpont is going to describe the charges in

7    the indictment and the maximum penalties that would apply if

8    you were convicted of those either at a trial or by a guilty

9    plea, and then he's going to describe the Plea Agreement the

10   Government has offered which proposes that you plead guilty

11   to slightly different offenses.  Specifically, a lesser

12   included offense of Count One of the indictment, and to Count

13   Two of the Indictment, but would dismiss Count Three of the

14   Indictment.  So I'm going to have him go through that process

15   now.

16              Mr. Pierpont.

17              MR. PIERPONT:  Thank you, Your Honor.

18              So beginning with the charges in the indictment.

19   Mr. Jimenez De La Cruz, as Your Honor indicated, has been

20   charged with three separate counts.

21              Count One is possession with intent to distribute 40

22   grams or more of fentanyl, in violation of 21 U.S.C. Sections

23   841(a)(1) and 841 (b)(1)(B)(vi).  That count carries a

24   mandatory term of imprisonment, assuming Mr. Jimenez De La

25   Cruz was convicted, of five years, and up to a 40 year term

1  of imprisonment, a five million dollar fine, and four years

2  of supervised release at a minimum and up to life.

3          Count Two of the Indictment charges Mr. Jimenez De

4  La Cruz with a violation of 18 U.S.C. Section 924(c),

5  possession of a firearm in furtherance of a narcotics

6  trafficking offense.  That count carries a mandatory term of

7  imprisonment of five years that must run consecutive to any

8  count of imprisonment imposed on Count One, up to a maximum

9  term of imprisonment of life, a $250,000 fine, and a maximum

10  term of supervised release of five years.

11          Count Three of the Indictment charges Mr. Jimenez De

12  La Cruz with a violation of 18 U.S.C. Section 922(g)(5)(A)

13  and 924(a)(2), an alien illegally or unlawfully in the United

14  States in possession of a firearm.  That carries a maximum

15  term of imprisonment of 10 years, a maximum fine of $250,000,

16  and a maximum term of supervised release of up to five years.

17          I will add, so the record's complete, each count of

18  conviction would carry a one hundred dollar special

19  assessment as well.

20          THE COURT:  Just for the record, to aggregate, if

21  Mr. Jimenez were convicted on all three counts, the total

22  effective sentence would be a minimum of 10 years of

23  imprisonment and a maximum of life?

24          MR. PIERPONT:  That is correct, Your Honor.

25          THE COURT:  All right.  Thank you.

1          MR. PIERPONT:  So turning now to the Plea Agreement

2   which, Your Honor, yes, there's a version dated October 18th,

3   2019.  As I indicated previously on the record, there was

4   another version that was dated December 3rd but was the same

5   in substance.  Lays out a proposed Plea Agreement between the

6   Government and Mr. Jimenez De La Cruz.

7          And the Plea Agreement, in broad strokes,

8   contemplates Mr. Jimenez De La Cruz pleading guilty to what's

9   called a lesser included count in Count One.  And with

10   possession with intent to distribute fentanyl, in violation

11   of section -- I'm sorry -- Title 21 United States Code

12   Sections 841(a)(1) and (b)(1)(C), as well as Count Two of the

13   Indictment.

14          It also contemplates that the Government would

15   dismiss Count Three of the Indictment at Mr. Jimenez De La

16   Cruz's sentencing.

17          It lays out the elements, Your Honor, which I'm

18   going to go through here in just a moment but, in light of

19   the discussion we just had on the maximum penalties, I think

20   maybe I'll jump to the penalty sections first because that's

21   really why the Government asked Judge Dooley for this *Frye*

22   hearing here today.

23          The lesser included offense charged in Count One,

24   and these are listed on page two of the proposed Plea

25   Agreement, carries a maximum penalty of 20 years in prison.

1   There is no minimum penalty.

2          The offense charged in Count Two, as I just

3   indicated, carries a maximum penalty of life and a minimum

4   penalty of five years in prison.

5          And so the effective total sentence that Mr. Jimenez

6   De La Cruz would be looking at, if he were to plead guilty to

7   Count One and Count Two, would be a minimum of five years but

8   still the maximum of life.

9          There is also the lesser included offense charged in

10  Count One carries a maximum fine of one million dollars.  The

11  offense charged in Count Two carries a maximum fine of

12  $250,000.  And I've put this -- let me be clear, with respect

13  to supervised release, the Court must impose a term of

14  supervised release of at least three years and as much as

15  life to begin after any term of imprisonment on Count One and

16  on Count Two.  I also mentioned the special assessment.

17         So with those penalties in focus, I'll outline the

18  rest of the Plea Agreement.

19         Going back to page one, the plea and offense lays

20  out the proposed crimes to which Mr. Jimenez De La Cruz would

21  plead guilty.  And the elements, for the lesser included

22  offense charged in Count One, the Government would have to

23  prove beyond a reasonable doubt that for the time period

24  specified in the indictment, the defendant possessed a

25  controlled substance, in this case that would be fentanyl;

1    second, that the defendant knew the substance he possessed

2    was a controlled substance; and, third, that the defendant

3    knowingly and intentionally possessed the substance with the

4    intent to distribute it.

5            With respect to Count Two of the Indictment, the

6    following elements would have to be satisfied beyond a

7    reasonable doubt at trial:

8            First, that the defendant committed the elements of

9    the drug trafficking crime prosecutable in Federal Court.

10   That would be Count One, Your Honor.

11           Second, that the defendant knowingly used, carried,

12   or possessed a firearm; and

13           Third, that the use or carrying of the firearm was

14   during and in relation to or the possession of the firearm

15   was in furtherance of the defendant's drug trafficking

16   crime.

17           I went through the penalties, Your Honor, on page

18   two.

19           Continuing to page three, there is a forfeiture

20   allegation here, in the middle of page three, that has to do

21   with money that was found at the residence, as well as the

22   firearm and ammunition that were found at the residence.

23           Continuing on to page four, that's where the

24   discussion about the Sentencing Guidelines begins.  Again,

25   there's -- not again.  There is a subsection called

1  applicability that discusses the applicability of the

2  Sentencing Guidelines here.  There is a subsection about

3  acceptance of responsibility where, provided the defendant

4  admitted his truthful conduct, he'll be eligible for up to

5  three points of a reduction under the Guidelines.  Also, on

6  page five there's reference to a stipulation which is

7  appended to the Plea Agreement.

8      Continuing on page six, there's a determination of

9  quantity.  Here, the defendant would agree, expressly agree

10  and stipulate that the quantity of fentanyl that he possessed

11  with the intent to distribute was 63.7 grams.  And he would

12  waive any right to a jury trial or sentencing hearing on this

13  issue.

14      I'm going to spend a little time on the Guideline

15  Stipulation here as well, Your Honor, because this is an area

16  where, candidly, the parties had trouble previously.

17  Specifically, there had been a Plea Agreement that was then

18  vacated because of some confusion about the Guidelines.  So

19  I'm going to take my time here.  I know this can be difficult

20  to understand.  I want to make sure that Mr. Jimenez

21  understands what the Guidelines and how they function here

22  would be.

23      THE COURT:  And it might make sense when you get

24  done with that section for us to take a moment and let

25  Mr. Jimenez confer with Mr. Hayes before we move on to the

1    remainder of the Plea Agreement.

2            MR. PIERPONT:  Yes, Your Honor.

3            THE COURT:  Thanks.

4            MR. PIERPONT:  Again, we're looking at the middle of

5    page six, the Guideline Stipulation.  It contemplates that

6    the defendant's base offense level for the lesser included

7    offense charged in Count One, and this is based on the

8    quantity that the parties would stipulate to, would be 24.

9    Three levels would then be subtracted for acceptance of

10   responsibility for a total offense level of 21.

11           Now, the Guideline violation for Count Two of the

12   Indictment is the term of imprisonment required by statute.

13   So that's 60 months full stop.  And that 60 months would have

14   to be imposed consecutive to any sentence Judge Dooley

15   entered on Count One.

16           Now, based on the initial assessment, the parties

17   agree that Mr. Jimenez De La Cruz is a Criminal History

18   Category I.  So a total offense level of 21, which would be

19   the offense level for the lesser included offense charged in

20   Count One, with a Criminal History Category of I, results in

21   a Guidelines imprisonment range of 37 to 46 months for Count

22   One.  On top of that, as I indicated, a mandatory minimum

23   term of imprisonment of 60 months would be required to be

24   imposed consecutively.

25           The defendant's fine range is also listed there.

1    It's 15,000 to one million dollars.  And the defendant would

2    be subject to a supervised release term of at least three

3    years.

4            There's a paragraph here that I also want to pay

5    particular attention to here, which is that the parties

6    agree, and that includes the Government, that a sentence of

7    one day on Count One, followed by a consecutive sentence of

8    60 months on Count Two, is an appropriate resolution of the

9    matter.  And that neither party, including the Government,

10   will ask Judge Dooley to impose any sentence other than a 60

11   month and one day sentence.

12           Now, the defendant understands that the Court is not

13   bound by this agreement or the Guidelines range specified

14   above, and that he will not be able to withdraw this guilty

15   plea if the Court imposes a sentence outside any of the

16   ranges that are set forth in this agreement.

17           And so I will pause there, Your Honor, because I

18   think that's a good pausing point, as Your Honor had

19   indicated, if there's any question about the Guidelines in

20   that section right there.

21           THE COURT:  So I just wanted to give you a moment,

22   Mr. Jimenez, if you had any questions about that portion

23   which, as Mr. Pierpont mentioned, has been the source of

24   complications in your case over time.  I wanted to make sure

25   you had a chance, with Ms. Kulig's assistance, to talk to

1   Mr. Hayes.

2           Mr. Hayes, I'll ask you to just confer with

3   Mr. Jimenez and see if he needs your input at this time.

4           (Whereupon, the defendant confers with his

5   attorney.)

6           MR. HAYES:  Thank you, Your Honor.

7           THE COURT:  All right.  Thank you.

8           Mr. Pierpont, you may carry on.  Pick up where we

9   left off I suppose.

10          MR. PIERPONT:  Yes, Your Honor.

11          Continuing on to page seven, there's a section

12  entitled Waiver of Rights.  That includes the waiver of trial

13  rights and consequences of guilty plea.  Your Honor would go

14  through some of these with him.  I think Your Honor did a

15  little bit here -- withdrawn.  If you don't think you did go

16  through that here.

17          But the defendant understands he has the right to

18  plead not guilty and to persist in that plea.  He has a right

19  to a public trial.  The right to be tried by a jury with the

20  assistance of counsel.  The right to confront and

21  cross-examine witnesses.  The right not to be compelled to

22  incriminate himself.  The right to testify and present

23  evidence.  And the right to compel attendance of witnesses.

24  And that if he were to plead guilty, he would be giving up

25  all of these rights that are listed in that section, Your

1    Honor.

2         There's also a section regarding the waiver of

3    statute of limitations, continuing on to page 8.  The

4    defendant would also waive the right, if he were to plead

5    guilty, to challenge his conviction except under a claim of

6    ineffective assistance of counsel.

7         The waiver of his right to appeal or collaterally

8    attack the sentence.  Here, Your Honor, there is an appellate

9    waiver that the parties contemplate.  It says specifically

10   that the defendant will not be able to appeal his sentence

11   provided that that sentence does not exceed 60 months and one

12   day of imprisonment, a lifetime term of supervised release, a

13   $200 assessment and a fine of one million dollars,

14   restitution in any amount, and forfeiture in the amount of

15   $10,185.

16        What I point out, Your Honor, is the converse of

17   that is also true.  Which is if there was a sentence that was

18   imposed that was larger than any of those limits, including a

19   term of imprisonment that was more than 60 months and one

20   day, that the defendant would have the right to appeal his

21   sentence to be heard at the 2nd Circuit Court of Appeals.

22        Continuing to page eight, there's a section called

23   Waiver of Challenge to Plea Based on Immigration

24   Consequences.  This is important here, Your Honor, because it

25   is the Government's position that Mr. Jimenez De La Cruz is

1   not here lawfully.  In fact, if he were to plead guilty to

2   the two counts contemplated here, removal would be

3   presumptively mandatory in this case.  And so that he would

4   be removed from the United States after any term of

5   imprisonment that was imposed here.

6          THE COURT:  Can I inquire?  Does the Government have

7   any opinion on whether Mr. Jimenez would be likely to be

8   removed even if he were found not guilty of any of these

9   charges?  Does he not have any status in the United States?

10         MR. PIERPONT:  The answer, Your Honor, is that he

11   does not have, in the Government's estimation, he does not

12   have -- what the Government knows right now is he has no

13   status here.  There was an admission that was made when he

14   was interviewed during the search warrant that he confirmed

15   that he was not here lawfully.  And so -- and the Government,

16   again, not being an immigration expert here, but I would

17   understand that under those circumstances that he would be

18   deported.

19         THE COURT:  Thank you.

20         MR. PIERPONT:  There's a section entitled

21   Acknowledgement of Guilt and Voluntariness of Plea.  A

22   section entitled Scope of the Agreement as well.  A section

23   entitled Collateral Consequences that has to do with

24   depriving certain federal benefits that he might otherwise be

25   entitled to receive.  And a section entitled Satisfaction of

1    Federal Criminal Liability and Breach.  Again, I would point

2    out there there is the sentence that says after sentencing,

3    the Government will move to dismiss Count Three of the

4    Indictment.

5           Page 11 says there are no other promises except for

6    those contained in this agreement.

7           And page 12, Your Honor, is the Stipulation of

8    Offense Conduct and Relevant Conduct.  I don't think we need

9    to go into that here now, unless Your Honor would like me to

10   for some reason.

11          THE COURT:  No.  Thank you.

12          Mr. Pierpont, has the Government set any deadlines

13   for Mr. Jimenez to accept or reject this agreement?

14          MR. PIERPONT:  The deadline that was set, Your

15   Honor, was today.  I am willing to extend that offer until

16   the end of business tomorrow so that Mr. Jimenez will have

17   the opportunity to speak to Mr. Hayes and having had the

18   benefit of, you know, this hearing here today.  But close of

19   business tomorrow, Your Honor, would be when the Government

20   would formally withdraw this plea offer.

21          THE COURT:  All right.

22          Mr. Hayes, from your perspective, has Mr. Pierpont

23   summarized the terms of the proposed agreement fully and

24   accurately?

25          MR. HAYES:  He has, Your Honor.

1          THE COURT:  Have you provided a copy of this Plea

2     Agreement -- I suppose I should really ask have you described

3     or read it to him with the assistance of an interpreter?

4          MR. HAYES:  This may be the first time that we've

5     done that with an interpreter.  But maybe -- to be honest

6     with you, I'm not certain.  But we've discussed it numerous

7     times.

8          THE COURT:  And he's been provided with a copy of

9     it?

10         MR. HAYES:  Yes.

11         THE COURT:  Does he have some ability to read

12    English?

13         MR. HAYES:  I think so but, honestly, I'm not sure.

14         THE COURT:  But you have discussed it at some

15    length?

16         MR. HAYES:  Absolutely.

17         THE COURT:  Including the terms of the agreement?

18         MR. HAYES:  Absolutely.

19         THE COURT:  All right.  Is it often the case that

20    counsel have not discussed the option of pleading without an

21    agreement.  I did mention that to Mr. Jimenez earlier.  Do

22    you recall whether you've discussed that with him?

23         MR. HAYES:  Yes.  In fact, we discussed it yet again

24    moments ago, Your Honor.

25         THE COURT:  All right.  Mr. Jimenez, if you could

1    stand, please.

2            Has Mr. Hayes informed you of the formal plea offer

3    made by the Government?

4            THE DEFENDANT:  Yes, Your Honor.

5            THE COURT:  Have you received a copy of the written

6    proposal?

7            THE DEFENDANT:  Yes.

8            THE COURT:  Are you able to read English?

9            THE DEFENDANT:  I can read about five percent.

10           THE COURT:  Okay.  So, in that case, have you fully

11   discussed the proposal with your attorney?

12           THE DEFENDANT:  Yes.

13           THE COURT:  Have you asked him questions about it?

14           THE DEFENDANT:  Yes.

15           THE COURT:  Have you asked him any questions that he

16   has not answered?

17           THE DEFENDANT:  Yes.

18           THE COURT:  I'll ask you to take a moment with

19   Mr. Hayes and to confer on that question so that I can

20   determine whether Mr. Hayes has not given you an answer

21   because it's a question he can't answer or whether there's

22   something you need to ask Mr. Hayes before we proceed.  So

23   why don't you all take a minute.

24           THE DEFENDANT:  That's okay.  We can keep going.

25           THE COURT:  Okay.  Well, it's important to me that

1    if you have any questions that we make sure you get an

2    answer, even if the answer is that I can't predict the future

3    or I don't know.  But I don't want you to ask me the question

4    in front of the prosecutor.  So it may be that I should

5    rephrase my question.  But what I'm trying to get to is is

6    there anything you've asked Mr. Hayes, any questions you

7    have, that he hasn't been able to answer for you?

8            THE DEFENDANT:  No, it's all okay.

9            THE COURT:  Okay.  Are you satisfied to have

10   Mr. Hayes and his office represent you?

11           THE DEFENDANT:  Yes.

12           THE COURT:  Okay.  As I mentioned, there are three

13   basic choices:  One is to plead not guilty and have a trial;

14   one is to plead guilty to the charges in the indictment with

15   no kind of agreement; and the third is to plead guilty with

16   an agreement such as the one the Government has suggested.

17           Mr. Pierpont mentioned, and I want to remind you,

18   that if you make an agreement with the Government that will

19   bind the Court only as to the minimum and maximum sentences.

20   But Judge Dooley would still have the legal right to impose

21   any sentence in that range she thought was appropriate.

22   Under your agreement, if that sentence was more than 60

23   months and one day, you'd have a right to appeal that

24   decision.  Do you have any questions for me or for Mr. Hayes

25   at this time?

1          THE DEFENDANT:  I have one for my attorney.

2          THE COURT:  Sure.  I'll give you a moment.

3          (Whereupon, the defendant conferred with his

4    attorney.)

5          MR. HAYES:  Your Honor, thank you.  I think if the

6    court reviews some of the record in this case, the case has

7    been pending for quite some time with a lot of twists and

8    turns.  I think that Mr. Jimenez wants to be heard on asking

9    the Court for new counsel.

10          THE COURT:  So, Mr. Jimenez, Mr. Hayes has indicated

11    that you might ask him to withdraw from your case and ask the

12    Court to appoint new counsel.

13          THE DEFENDANT:  Exactly.

14          THE COURT:  You have a constitutional right to an

15    attorney who can provide you with effective assistance.  As

16    one of my colleagues once told my client when I was a defense

17    lawyer, you don't have the right to the attorney of your

18    choice, but you do have a right to an attorney who can

19    effectively represent you.

20          THE DEFENDANT:  I understand.

21          THE COURT:  So you can request that Mr. Hayes file a

22    motion --

23          THE DEFENDANT:  I did already ask.

24          THE COURT:  Well, you can request that he file one

25    with the Court, but Judge Dooley doesn't have to grant it.

1    If she does grant it and she gives you a new attorney, you

2    may or may not like that new attorney, but you won't be able

3    to go back to Mr. Hayes and his office.

4              THE DEFENDANT:  I understand.

5              THE COURT:  It might cause further delays.  And if

6    Judge Dooley thinks that further delays are a problem, that

7    could be a basis for her to deny the motion.  So there are a

8    variety of considerations that she'll have to take into

9    account if you decide to file that motion.  But if you direct

10   Mr. Hayes unequivocally, without doubt, that he should file

11   that motion, he'll file that motion.  But for today Mr. Hayes

12   is your attorney and I'm going to continue the process of

13   determining whether you've received information about this

14   Plea Agreement.

15             So are there any questions that you have for me

16   about the Plea Agreement itself?

17             THE DEFENDANT:  No.

18             THE COURT:  As I mentioned at the beginning, the

19   decision about whether to plead guilty or not guilty and

20   whether to enter into any particular Plea Agreement are for a

21   defendant only.  And you're entitled to the advice of an

22   attorney in making that decision.  Whatever your attorney

23   advises, the attorney will respect your wishes to whatever

24   decision you make.

25             All right.  Before I inquire of Mr. Jimenez how he

1    wishes to proceed as to this agreement, Mr. Pierpont, is

2    there anything else the Government would like to put on the

3    record?

4         MR. PIERPONT:  Yes, Your Honor.  I would like to put

5    on the record, and I'm sure that Mr. Jimenez De La Cruz and

6    Mr. Hayes understand, that notwithstanding his request that I

7    heard right now, which may or may not result in a motion, the

8    Government plans to formally via letter withdraw this plea

9    offer by the end of the day tomorrow.  And the Government

10   makes no promises, representations, or warranties that even

11   if Mr. Jimenez has another lawyer, that the government will

12   reoffer a Plea Agreement.

13        So I'll leave it at that, Your Honor.  Thank you.

14        THE COURT:  I apologize.  I did not circle back to

15   the deadline.

16        So Mr. Pierpont mentioned earlier and again just now

17   that this offer expires tomorrow.  And so as of tomorrow,

18   this agreement will not be available.  I don't know what will

19   happen after that.  I think I mentioned at the beginning that

20   in Federal Court there's no right to any kind of Plea

21   Agreement.  So it could be that the Government offers no Plea

22   Agreement, a different Plea Agreement, the same Plea

23   Agreement.  But what we do know is that tomorrow, at the end

24   of the day, this offer will be closed.  Do you understand

25   that?

1          THE DEFENDANT:  Yes.

2          THE COURT:  All right.  So at this time of your

3   three choices, to go to trial, to plead guilty without an

4   agreement, or to plead guilty pursuant to this agreement,

5   have you made a decision?

6          MR. HAYES:  Your Honor, may I respond, I'm sorry,

7   for Mr. Jimenez?

8          THE COURT:  Of course.

9          MR. HAYES:  I apologize.

10          We would ask to take the time and to respond to the

11   Government directly tomorrow.

12          THE COURT:  Okay.  So, Mr. Jimenez, I'll give you an

13   additional opportunity to consult with counsel.  And as long

14   as you have -- well, you'll have to communicate some response

15   directly to the Government, through counsel, by tomorrow at

16   five o'clock.

17          I suspect that Judge Dooley will want to handle any

18   proposed -- this plea, if it goes forward, on her own,

19   otherwise, I would give you all a proposed date.

20          But at this time we'll keep the question open.

21   We'll give you that extra 28 hours to decide and to inform

22   the Government of your decision.

23          All right.  Mr. Hayes, from your perspective,

24   anything else we should address?

25          MR. HAYES:  No, Your Honor.  Thank you.

1          THE COURT:  And, Mr. Pierpont, circling back again,

2     have I missed anything now?

3          MR. PIERPONT:  No, Your Honor, that's all.  Thank

4     you.

5          THE COURT:  All right.  Do you have any last

6     questions for me before we recess, Mr. Jimenez?

7          THE DEFENDANT:  The defendant asks if he may sit

8     down, Your Honor?

9          THE COURT:  Just in one moment.  Do you have any

10    additional questions for me?

11         MR. HAYES:  I'm sorry, Your Honor, he has a third

12    degree burn on his foot and he has --

13         THE COURT:  Okay.  Sure.  Go ahead and sit down.

14         MR. HAYES:  Sorry, Your Honor.

15         THE COURT:  That's okay.

16         THE DEFENDANT:  No questions.

17         THE COURT:  Thank you.  We'll stand in recess.

18         (Concluded at 11:50, a.m.)

19

20

21

22

23

24

25

1          C E R T I F I C A T E

2

3          I, Martha C. Marshall, RMR, CRR, hereby certify that

4    the foregoing pages are a complete and accurate transcription

5    to the best of my ability of the electronic recording of the

6    hearing held in the matter of UNITED STATES V. DANIEL JIMENEZ

7    DE LA CRUZ, which was held before the Honorable Sarah A. L.

8    Merriam, U.S.D.J, at 141 Church Street, New Haven,

9    Connecticut, on January 16, 2020.

10

11

12

13                              /s/Martha C. Marshall
                                Martha C. Marshall, RMR,CRR
14                              Transcriber

15          .

16

17

18

19

20

21

22

23

24

25