1

1    IN THE UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF CONNECTICUT
2

3   UNITED STATES OF AMERICA,      )
                                   )
4                  Plaintiff,      )
                                   )          3:19-CR-00048-KAD
5   vs.                            )          Bridgeport, CT
                                   )
6   DANIEL JIMINEZ DE LA CRUZ,     )
                                   )
7                  Defendant.      )
    _____)
8

9                  TRANSCRIPT OF PLEA HEARING
           BEFORE THE HONORABLE KARI A. DOOLEY,
10                UNITED STATES DISTRICT JUDGE
                       JUNE 12, 2019
11

12  APPEARANCES:

13  For the Government:        John Trowbridge Pierpont
                               Assistant U.S. Attorney
14                             157 Church Street, 25th Floor
                               New Haven, CT 06510
15

16  For the Defendant:         Tracy Hayes
                               Assistant Public Defender
17                             265 Church Street, Suite 702
                               New Haven, CT 06510
18

19  Official Court Interpreter:   Sonya Berah

20

21  Official Court Reporter:   Traci D. Walker, RMR-CRR-CRC
                               Official Court Reporter

22

23

24

25

              UNITED STATES DISTRICT COURT

```
 1              COURTROOM DEPUTY:  All rise.  The Honorable United
 2   States District Court is now open, the Honorable Kari A. Dooley
 3   presiding.  Please be seated.
 4              MR. PIERPONT:  Good morning, Your Honor.
 5              MR. HAYES:  Good morning, Your Honor.
 6              THE COURT:  All right.  Good morning.
 7              We are here on the matter of the United States of
 8   America versus Daniel Jiminez De La Cruz.
 9              Counsel, please identify yourselves for the record.
10              MR. PIERPONT:  Good morning, Your Honor.  Assistant
11   United States Attorney John Pierpont on behalf of The United
12   States.  I'm joined here at counsel table by DEA Special Agent
13   James Keczkemethy.
14              THE COURT:  All right.  Good morning.
15              MR. PIERPONT:  Good morning.
16              MR. HAYES:  Good morning, Your Honor.  Tracy Hayes for
17   Mr. Daniel Jiminez De La Cruz.
18              THE COURT:  Good morning, Mr. Hayes.
19              MR. HAYES:  Good morning.
20              THE COURT:  Good morning, Mr. De La Cruz.
21              THE DEFENDANT:  Good morning.
22              THE COURT:  Ma'am, may I ask you to identify yourself
23   for the record.
24              INTERPRETER:  Sonja Berah, Spanish Interpreter.
25              Good morning.
```

UNITED STATES DISTRICT COURT

```
 1            THE COURT:  Okay.  Thank you.  I would ask the Clerk
 2    of Court to administer your oath.
 3                        Sonia Berah,
 4    AFTER HAVING BEEN FIRST DULY SWORN AS INTERPRETER, INTERPRETED
 5    AS FOLLOWS:
 6            THE COURT:  Ma'am, let me just ask you, preliminarily,
 7    have you had any problems communicating with the defendant this
 8    morning?
 9            INTERPRETER:  No, Your Honor.
10            THE COURT:  Okay.  All right.
11            Mr. Hayes, it's my understanding that your client
12    intends to enter guilty pleas to three charges this morning.
13            MR. HAYES:  That's correct, Your Honor.
14            THE COURT:  All right.  I'm going to ask you to -- all
15    three of you to approach the lectern.
16            MR. HAYES:  Thank you.
17            THE COURT:  All right.  Before we get started, let me
18    ask Mr. Pierpont, are there any victims who need to be
19    identified or heard pursuant to statute?
20            MR. PIERPONT:  No, Your Honor.  The government has not
21    identified any victims.
22            THE COURT:  Okay.  Thank you.
23            Sir, if I'm going to accept your guilty plea, I need
24    to ask you a series of questions so that I can be sure that you
25    fully understand the situation, the consequences of your
```

4

```
1   decision, and I need to be sure that your decision is both

2   knowing and voluntary, so the first thing I'm going to do is

3   I'm going to ask the clerk to place you under oath.

4            COURTROOM DEPUTY:  Raise your right hand.

5                    DANIEL JIMINEZ DE LA CRUZ,

6   AFTER HAVING BEEN FIRST DULY SWORN, TESTIFIED AS FOLLOWS:

7            THE COURT:  State your name.

8            THE DEFENDANT:  I do.  I swear.

9            Jiminez De La Cruz.

10           THE COURT:  How old are you, sir?

11           THE DEFENDANT:  33.

12           THE COURT:  And how far did you go in school?

13           THE DEFENDANT:  I got through the first grade.

14           THE COURT:  Do you read?  Can you read?

15           THE DEFENDANT:  Yes.

16           THE COURT:  Okay.  And can you write?

17           THE DEFENDANT:  Yes.

18           THE COURT:  And where did you go to the first -- where

19   did you go to school that you went through the first grade?

20           THE DEFENDANT:  In the Dominican Republic.

21           THE COURT:  And I take it you do not read or write

22   English?

23           THE DEFENDANT:  No.

24           THE COURT:  In the last 48 hours, have you had any

25   alcohol or drugs?  And by "drugs", I include both narcotics and
```

UNITED STATES DISTRICT COURT

1  prescriptions.

2          THE DEFENDANT:  No.

3          THE COURT:  And your mind is clear here today?

4          THE DEFENDANT:  Yes.

5          THE COURT:  And have you recently been treated for

6  either mental illness or substance abuse issues?

7          THE DEFENDANT:  I've been treated for other --

8          INTERPRETER:  With whom?

9          THE DEFENDANT:  I've been treated for -- not for that.

10  I just had an accident at work, but that's all.

11          THE COURT:  Okay.  Are you presently under the care of

12  a doctor for any physical ailment?

13          THE DEFENDANT:  Yes, but I didn't have it yesterday or

14  I didn't take it yesterday.

15          THE COURT:  Okay.  And when you say "take it", are you

16  talking about the prescriptions or treatment?

17          THE DEFENDANT:  Yes.

18          THE COURT:  All right.  Mr. Hayes, have you had any

19  problems communicating with your client?  Do you have any

20  reasons to question his competence to plead guilty here today?

21          MR. HAYES:  None whatsoever, Your Honor.

22          And, Your Honor, I'm sorry.  If I just briefly may

23  indicate, I believe Mr. Jimenez can read some English.  I --

24  we've spent a lot of time, whether it's with this plea or other

25  documents, and I believe he can.  So he answered "no" earlier,

                    UNITED STATES DISTRICT COURT

6

1   but I believe he can.

2           THE COURT:  So let me just back up for a moment.

3           I take it you can read and write Spanish?

4           THE DEFENDANT:  Yes.

5           THE COURT:  Okay.  Do you have any limited ability to

6   read or write English?

7           THE DEFENDANT:  I can read a little bit, and I can

8   write short messages.

9           THE COURT:  Okay.  All right.

10          It's my understanding that the defendant intends to

11  plead guilty to a lesser-included offense under Count One,

12  which is a violation of Section 841(a)(1) of Title 21; that

13  he's going to plead guilty to Count Two, which is possession of

14  a firearm in furtherance of a drug trafficking crime; and Count

15  Three, which is possession of a firearm by an alien unlawfully

16  in The United States.

17          Mr. Hayes, have you discussed this case with your

18  client?

19          MR. HAYES:  I have, Your Honor.

20          THE COURT:  Have you discussed the rights he will be

21  waiving by pleading guilty?

22          MR. HAYES:  I have, Your Honor.

23          THE COURT:  Are you satisfied that he's capable of

24  understanding the nature of these proceedings and the rights

25  he's waiving by pleading guilty?

                    UNITED STATES DISTRICT COURT

1          MR. HAYES:  Yes, Your Honor.

2          THE COURT:  Have you advised your client of the

3    maximum penalties that can be imposed for both incarceration

4    and fine provisions?

5          MR. HAYES:  I have.

6          THE COURT:  Have you discussed any mandatory minimum

7    periods of incarceration or supervised release that might be

8    implicated by this plea?

9          MR. HAYES:  I have, Your Honor.

10         THE COURT:  And have you discussed the applicability

11   and operation of the sentencing guidelines?

12         MR. HAYES:  Yes, I have, Your Honor.

13         THE COURT:  Mr. De La Cruz, have you had enough time

14   and opportunity to consult with Mr. Hayes about the charges and

15   your decision to plead guilty?

16         THE DEFENDANT:  Yes, Your Honor.

17         THE COURT:  And you're satisfied to have him represent

18   you here this morning?

19         THE DEFENDANT:  Yes, Your Honor.

20         THE COURT:  Where were you born, Mr. De La Cruz?

21         THE DEFENDANT:  In Bonny [phonetic], Dominican

22   Republic.

23         THE COURT:  And I take it from the allegations in the

24   indictment that you are not a citizen of The United States?

25         THE DEFENDANT:  I'm not, Your Honor.

                    UNITED STATES DISTRICT COURT

8

```
1          THE COURT:  I need to explain to you that this plea
2   would have significant adverse immigration consequences for
3   you.  It could result in your deportation, your removal, denial
4   and naturalization, denial of future admission to The United
5   States, and a whole host of other immigration consequences.  Do
6   you understand that?
7          THE DEFENDANT:  Yes, ma'am.
8          THE COURT:  And I think I saw in the plea agreement
9   there may even be a presumption that you're going to be
10  deported from The United States.  Do you understand that?
11         THE DEFENDANT:  Yes, ma'am.
12         THE COURT:  Now, that all takes place in a different
13  form on a different date, and I -- I don't have any role in
14  that.  Do you understand that?
15         THE DEFENDANT:  Yes, ma'am.
16         THE COURT:  And have you had enough time to talk to
17  Mr. Hayes about the immigration consequences of your plea?
18         THE DEFENDANT:  Yes, ma'am.
19         THE COURT:  Okay.  Now, have you read the indictment
20  that contains the written charges against you or had it read to
21  you by someone?
22         THE DEFENDANT:  Somebody read it to me.
23         THE COURT:  All right.  And have you discussed the
24  charges with your attorney?
25         THE DEFENDANT:  Yes, ma'am.
```

UNITED STATES DISTRICT COURT

1          THE COURT:  And did Mr. Hayes advise you as to the

2    maximum penalties that could be imposed?

3          THE DEFENDANT:  Yes, ma'am.

4          THE COURT:  And did he discuss with you what we call

5    the elements of each offense?  And, by that, I mean what the

6    government would have to prove if there was a trial.

7          THE DEFENDANT:  Yes.

8          THE COURT:  And did he talk to you about what the

9    nature of the government's evidence would be, who the witnesses

10   might be, or what type of evidence they might bring before the

11   Court?

12         THE DEFENDANT:  Yes.

13         THE COURT:  Is that right, Mr. Hayes?

14         MR. HAYES:  That's correct, Your Honor.

15         THE COURT:  Now, I need to talk to you about the

16   rights you're waiving by pleading guilty.

17         You have the right to persist in a not guilty plea and

18   proceed to a public and speedy trial before a properly

19   constituted jury.

20         You would have the right to be present at every stage

21   of the proceedings from jury selection, pretrial hearings, and,

22   of course, the trial itself.

23         You would have the right to be represented by an

24   attorney throughout all of those proceedings, and if you

25   couldn't afford one, one would be appointed to represent you.

1  And, of course, Mr. Hayes, who works with our public defender,

2  has been appointed to represent you.

3          At the trial you would be presumed innocent, and the

4  government would have to overcome that presumption with

5  competent evidence, proof beyond a reasonable doubt that you

6  are guilty.  You would not have to prove your innocence and if

7  the government failed to meet its burden, the jury would be

8  instructed that they must find you not guilty.

9          At the trial, with the assistance of counsel, you

10  would have the right to challenge the government's evidence,

11  cross-examine the government's witnesses.  You would have the

12  right to call your own witnesses and offer your own evidence.

13          You could testify if you wanted to, but you could

14  never be compelled to either present evidence or testify.  Do

15  you understand that?

16          THE DEFENDANT:  Yes, ma'am.

17          THE COURT:  And if, at trial, you decided not to

18  present a defense and you decided not to testify, the jury

19  would be instructed that they could not hold that against you.

20  They could not draw any adverse inference of guilt by your

21  failure to testify.  Do you understand that?

22          THE DEFENDANT:  Yes, ma'am.

23          THE COURT:  And, finally, at the trial, if the jury

24  was to convict you, their decision would have to be unanimous.

25          INTERPRETER:  I'm sorry?

                    UNITED STATES DISTRICT COURT

11

1          THE DEFENDANT:  What did you say?

2          THE COURT:  Their decision would have to be unanimous.

3          THE DEFENDANT:  Yes, ma'am.

4          THE COURT:  Do you understand that none of this will

5    happen if I accept your guilty plea because we will not have a

6    trial?

7          THE DEFENDANT:  Yes, ma'am.

8          THE COURT:  And do you feel you understand the rights

9    that you're waiving by pleading guilty?

10          THE DEFENDANT:  Yes, ma'am.

11          THE COURT:  And do you have any questions for me about

12   the trial rights you're waiving?

13          THE DEFENDANT:  No.  I don't have a question, but I

14   would like to add something, if it's possible.

15          THE COURT:  Go ahead.

16          Mr. Hayes, do you want to confer with him?

17          MR. HAYES:  If I may.

18          THE COURT:  Yes.

19            [Mr. Hayes conferred with the defendant.]

20          MR. HAYES:  I think we're fine.

21          THE COURT:  Okay.  There's a lot more questions

22   coming, Mr. De La Cruz, and I'll give you an opportunity to

23   talk to your attorney.

24          THE DEFENDANT:  It's all right, but thank you very

25   much.

                    UNITED STATES DISTRICT COURT

1        THE COURT:  Okay.  Now, if you want to plead guilty, I

2    need to be sure that you are, in fact, guilty.  I can't accept

3    a guilty plea if you claim to be innocent, or if I'm not

4    satisfied that you broke the law as charged.

5        So I'm going to be asking you questions about what

6    you've done and, if you answer those questions, you are waiving

7    your Fifth Amendment right to remain silent.  Do you understand

8    that?

9        THE DEFENDANT:  Yes.

10        THE COURT:  Now, because these charges are felonies,

11    your pleas would also result in a loss of certain civil rights:

12    The right to vote, the right to hold public office, the right

13    to possess firearms or ammunition, the right to serve on a jury

14    and, perhaps, others.  Do you understand?

15        THE DEFENDANT:  Yes, ma'am.

16        THE COURT:  You are also going to be required, if you

17    have not already, to give a DNA sample, which will be added to

18    a national database.  Do you understand?

19        THE DEFENDANT:  Yes, ma'am.

20        THE COURT:  Okay.  And, in addition, because this is a

21    drug charge, you will be rendered ineligible for certain

22    federal benefits.  You will be ineligible for assistance under

23    any state program funded under the Social Security Act, and you

24    would not be entitled to benefits under the Food Stamp Program.

25        THE DEFENDANT:  Yes, ma'am.

                    UNITED STATES DISTRICT COURT

13

```
 1            THE COURT:  Okay.  Mr. Hayes, is there a written plea
 2   agreement?
 3            MR. HAYES:  There is, Your Honor.
 4            THE COURT:  And do you have the original signed by the
 5   government?
 6            MR. HAYES:  We do, Your Honor.
 7            MR. PIERPONT:  Your Honor, I haven't signed it yet, so
 8   just give me a moment to sign it.
 9            THE COURT:  Yes.
10            MR. HAYES:  We do now, Your Honor.
11            THE COURT:  Thank you.  Mr. De La Cruz, have you read
12   this agreement or had it read to you?
13            MR. HAYES:  Your Honor, I'm sorry.  If I may?
14            So, earlier, Mr. Jiminez alluded to an injury.  He
15   has -- it may be a soft cast, but he burned, severely, his foot
16   while he was working, so he's -- it's uncomfortable when he
17   stands for long periods of time.
18            THE COURT:  Okay.  Well, I have no problem with him --
19   with him returning to the table so that he may sit down.  I'll
20   just ask you to lower your mics.
21            MR. HAYES:  Yes, Your Honor.  Thank you.
22            THE COURT:  All right.  Mr. Hayes, does your client
23   prefer to be called Mr. De La Cruz or Mr. Jimenez?
24            THE DEFENDANT:  Jimenez.
25            THE COURT:  Okay.  I'll make that adjustment.
```

UNITED STATES DISTRICT COURT

1           All right.  Mr. Jiminez, have you read the plea

2     agreement or had somebody read it to you?

3           THE DEFENDANT:  Somebody read it to me.

4           THE COURT:  I'm going to ask the government to please

5     outline the salient terms of the plea agreement, remembering

6     that we're using an interpreter.

7           MR. PIERPONT:  Certainly, Your Honor.

8           The written plea agreement is dated today, June

9     12th, 2019, and it is addressed to Attorney Hayes.

10          It is broken out into a number of different sections.

11    The first section is entitled, "the plea and offense."

12          And it says, specifically, and, most specifically,

13    which charges or to which charges the defendant will be

14    pleading guilty.  The first is the lesser included offense

15    contained in Count One of the indictment, which charges

16    Mr. Jiminez with possession and intent to distribute fentanyl,

17    a violation of 21 United States Code, Section 841(a)(1).

18          Count Two of the indictment charges him with

19    possession of a firearm in furtherance of a narcotics

20    trafficking offense in violation of Title 18, United States

21    Code Section 924(c)(1)(a)(i).

22          And Count Three of the indictment charges Mr. Jiminez

23    with an alien being illegally or unlawfully in The United

24    States, in possession of a firearm, in violation of Title 18,

25    United States Code Sections 922(g)5(a) and 924(a)2.

                    UNITED STATES DISTRICT COURT

1          That section also contains the elements, Your Honor,

2    that the government would have to prove, beyond a reasonable

3    doubt, before this matter were to proceed to trial.  Those are

4    laid out there.  And the first to the guilty of a lesser

5    included offense charged in Count One of the indictment and the

6    following essential elements would have to be proved beyond a

7    reasonable doubt.  First, for the time period specified in the

8    indictment, the defendant possessed a controlled substance, in

9    this case, that is fentanyl; second, that the defendant knew

10   the substance he possessed was a controlled substance and;

11   third, the defendant knowingly and intentionally possessed the

12   substance with the intent to distribute it.

13         With respect to Count Two of the indictment, the

14   following essential elements would have to be satisfied:

15   First, the defendant committed the element of the drug

16   trafficking crime prosecutable in federal court.  That would be

17   Count One, Your Honor.

18         Second, that the defendant knowingly used, carried, or

19   possessed a firearm.

20         And, third, the use or carrying of the firearm was

21   during and in relation to or whether the possession of the

22   firearm was in furtherance of the defendant's drug trafficking

23   crime.

24         With respect to Count Three, there are two elements

25   the government would prove beyond a reasonable doubt if this

1  matter proceeded to trial.  The first, that the defendant

2  knowingly possessed a firearm and, second, at the time that he

3  possessed the firearm, the defendant was an alien illegally or

4  unlawfully in The United States.

5       There's a note here, a section here as well, Your

6  Honor, that we added, given the Supreme Court's pending

7  decision in *Rehaif v. United States*.  Currently, the Supreme

8  Court is deciding whether, as an element of the offense in

9  Count Three, the defendant must also have known of his status

10  as an alien being illegally and unlawfully in The United

11  States.  And so the defendant here in this section is expressly

12  stipulating that he did know his status as an illegal alien

13  unlawfully in the United States, regardless of how it is the

14  Supreme Court decides the matter in *Rehaif*.

15       Page 2, Your Honor, continues, the penalties that are

16  carried by each of the counts to which Mr. Jiminez will be

17  pleading guilty beginning with imprisonment, the

18  lesser-included offense charged in Count One carries a maximum

19  penalty of 20 years' imprisonment.

20       The offense charged in Count Two carries a maximum

21  penalty of life and a minimum penalty of five years'

22  imprisonment, and the offense charged in Count Three carries a

23  maximum penalty of 10 years' imprisonment.

24       With respect to supervised release, the Court, in this

25  instance, would have to impose a term of supervised release of

UNITED STATES DISTRICT COURT

1  at least three years and as much as life to begin after a term

2  of imprisonment.

3          There is also a section about fines as well, Your

4  Honor.  The lesser-included offense in Count One carries a

5  maximum fine of $1 million.

6          The offense charged in Count Two carries a maximum

7  fine of $250,000.

8          And the offense charged in Count Three carries a

9  maximum fine of $250,000.

10          There is also a section, Your Honor, about the

11  alternative fine provision in that fine section as well.

12          With respect to special assessment, a special

13  assessment, the defendant will have to pay a special assessment

14  of $100 of each count of conviction.

15          There's a section about interest, penalties and fines.

16          There is also a section, Your Honor, that goes from

17  Page 3 to Page 4 on forfeiture.  In sum and substance, the

18  defendant agrees to forfeit, consistent with the allegations in

19  the indictment, forfeiture counts in the indictment, a Smith &

20  Wesson .38 caliber revolver bearing serial number R-19251,

21  which was seized on September -- on or about September 20th,

22  2018, and related ammunition.

23          The defendant also agrees to forfeit $10,185 in United

24  States currency that was seized from 10 Bronson Street in

25  Waterbury, Connecticut on or about September 20th, 2018.

                    UNITED STATES DISTRICT COURT

1           Page 5, Your Honor, continues with the section called

2    the sentencing guidelines.

3           There is a discussion about applicability of the

4    sentencing guidelines, acceptance of responsibility.  In short,

5    the government would agree to recommend to the Court to reduce

6    by two levels defendant's adjusted offense level and then, a

7    third, provided certain conditions are met provided that the

8    defendant continues to truthfully admit the conduct comprising

9    the offense of conviction that we're here for today.

10          Page 6 talks about a stipulation of facts, Your Honor.

11   That's appended at the end.  Page 6 also has a section about

12   the determination of quantity and there, specifically, the

13   parties agree and acknowledge that the quantity of fentanyl

14   that he possessed with intent to distribute was 63.7 grams.

15          There's also a guideline stipulation as well that the

16   parties have agreed to that talks about -- and I know Your

17   Honor is going to talk about the guidelines in a moment with

18   him, but the defendant's base offense level based upon the

19   quantity of drugs at issue here was 24.  That level would be

20   increased by two points because of a dangerous weapon, in this

21   instance, a Smith & Wesson revolver, was possessed.

22          Three levels will be subtracted for acceptance of

23   responsibility resulting in a total offense level of three.

24          The parties also agree that defendant has a criminal

25   history category offense -- I'm sorry, falls within a criminal

                    UNITED STATES DISTRICT COURT

1  history category I.  Under those circumstances, Your Honor, the

2  guideline sentence would be the 60 months of imprisonment,

3  which is the statutory required mandatory minimum sentence

4  pursuant to the guideline Section 5(g)1.1(c), a fine range of

5  $20,000 to 100 -- excuse me, $1 million, and is subject to --

6  and also subject to a term of supervised release of at least

7  three years.

8          There is a section, Your Honor, as well, on

9  information to the Court, that the defendant may present any

10  information to the Court.

11         At the bottom of page 7, there's another section

12  called "waiver of rights."  I'm not going to go in depth into

13  those, Your Honor.  I've covered a lot of them already with the

14  defendant, but those include the waiver of trial rights and the

15  consequences of a guilty plea, a waiver of statutory -- any

16  claim about the statute of limitations.

17         Mr. Jiminez agrees to waive his right to challenge his

18  conviction, except in extraordinary, limited circumstances.

19         He also agrees, Your Honor, to waive his right to

20  appeal or collaterally attack his sentence, and this continues

21  onto Page 9, provided the sentence does not exceed 60 months of

22  imprisonment, a lifetime term -- a life term of supervised

23  release, a $300 special assessment, a fine of $1 million,

24  restitution in any amount, and forfeiture in the amount of

25  $10,185, regardless of how the Court ultimately decides to

                    UNITED STATES DISTRICT COURT

```
 1  impose that sentence.  And, by that, I mean whatever the Court
 2  does with the guidelines as it goes along.
 3           There is also a section about the waiver of challenge
 4  plea based on immigration consequences.  Your Honor talked at
 5  length about that with Mr. Jiminez.
 6           At the bottom of page 9, there is a section called
 7  "acknowledgment of guilt and voluntariness of plea."
 8           Page 10 talks about the scope of the agreement,
 9  additional collateral consequences, the satisfaction of federal
10  criminal liability and breach.
11           And page 11 talks about the fact that there are no
12  other promises, other than those that are contained in this
13  agreement.
14           Page 12, Your Honor, is a stipulation of offense
15  conduct.  And I haven't been before you before, but I assume at
16  some point we will get into what that is as well.
17           THE COURT:  We will.  Thank you.
18           Mr. Jiminez, you heard the prosecutor outline the
19  terms of the plea agreement.  Do you agree with his recitation
20  of the terms of your plea agreement?
21           THE DEFENDANT:  Yes, ma'am.
22           THE COURT:  Okay.  Was there any portion of the
23  agreement that he discussed that you disagreed with or may have
24  even had a slightly different understanding about?
25           THE DEFENDANT:  Everything is fine.
                    UNITED STATES DISTRICT COURT
```

```
 1            THE COURT:  Okay.  All right.  Mr. Hayes, do you agree
 2   with the prosecution's summary of the plea agreement?
 3            MR. HAYES:  I do, Your Honor.
 4            THE COURT:  And, Mr. Jiminez, did you go over this
 5   agreement with Mr. Hayes?
 6            THE DEFENDANT:  Yes, ma'am.
 7            MR. HAYES:  Your Honor, if I may?  I'm sorry.
 8            If I may, also, Mr. Jiminez also -- not only did we
 9   review the plea several times, but he's also had the plea
10   reviewed in Spanish, at least twice in the Spanish language
11   with, frankly, an attorney.
12            THE COURT:  Okay.  Thank you.
13            MR. HAYES:  Thank you.
14            THE COURT:  Mr. Jiminez, do you understand the terms
15   of this agreement?
16            THE DEFENDANT:  Yes, ma'am.
17            THE COURT:  And has anyone promised you anything,
18   other than what is in this plea agreement, to get you to enter
19   into the plea agreement or to enter a guilty plea?
20            THE DEFENDANT:  No, ma'am.
21            THE COURT:  Has anyone forced you, threatened you, or
22   coerced you in any way to get you to enter into this plea
23   agreement, or to plead guilty?
24            THE DEFENDANT:  No, ma'am.
25            THE COURT:  Now, the plea agreement identifies
                     UNITED STATES DISTRICT COURT
```

1  additional rights that you are waiving, including your right to

2  appeal your sentence in most circumstances, and your ability to

3  collaterally attack your conviction.  Do you understand that?

4          THE DEFENDANT:  Yes, ma'am.

5          THE COURT:  Normally, a person has a right to appeal

6  their sentence, but you are waiving that right if I sentence

7  you to 60 months in prison.  Do you understand that?

8          THE DEFENDANT:  Yes, ma'am.

9          THE COURT:  Now, if I were to sentence you to more

10  than 60 months, then you could appeal that under this plea

11  agreement.  Do you understand that?

12          THE DEFENDANT:  Perfectly.

13          THE COURT:  Okay.  And there are two limitations on

14  your waiver.  You are permitted, in an appropriate forum, to

15  challenge both your conviction and your sentence if the claim

16  raised is that you did not have effective assistance of

17  counsel.

18          THE DEFENDANT:  Yes, ma'am.

19          THE COURT:  Now, the plea agreement includes an

20  agreement with the government as to how the sentencing

21  guidelines might be calculated, and they may be right, but

22  their agreement does not bind the Court and, ultimately, it's

23  going to be my decision as to what the guideline range is in

24  your case.  Do you understand that?

25          THE DEFENDANT:  Can you please repeat that again.

UNITED STATES DISTRICT COURT

23

```
 1              THE COURT:  Sure.  Your lawyer and the government's
 2    lawyer have included what they believe is an accurate
 3    calculation of the sentencing guidelines, and they might be
 4    correct but, ultimately, it's my determination as to what the
 5    sentencing guidelines are and, there again, it does not bind
 6    me.  Do you understand that?
 7              THE DEFENDANT:  I understand.  I understand.
 8              THE COURT:  Okay.  So if, for any reason, I calculate
 9    the guidelines to be different at the time of sentencing, that
10    would not be a basis upon which you could withdraw your guilty
11    plea.  You understand that?
12              THE DEFENDANT:  Yes, ma'am.
13              THE COURT:  All right.  Do you have any questions for
14    me or your lawyer about the terms of this plea agreement?
15              THE DEFENDANT:  No.  Everything is fine.  Thank you.
16              THE COURT:  Mr. Hayes, I'm going to ask you and your
17    client to execute, first, just at page 11, the plea agreement.
18              MR. HAYES:  Yes, Your Honor.
19                         [There was a pause.]
20              MR. HAYES:  We have executed our signatures on page
21    11, Your Honor.
22              THE COURT:  Thank you.  Mr. Jiminez, you are -- the
23    plea agreement calls for you to plead guilty to the
24    lesser-included offense in Count One, which is a violation of
25    Title 21, United States Code Section 841(a)(1);
```

UNITED STATES DISTRICT COURT

1        Count Two, which is carrying or using a firearm in
2   furtherance of that drug trafficking crime;
3        And, Count Three, possessing a firearm while illegally
4   and unlawfully in the United States.
5        The government has already outlined what it would have
6   to prove if the case were to go to trial, and those elements
7   are also contained in your plea agreement, so I'm not going to
8   repeat those here.
9        But even though it's in your plea agreement, I need to
10  review with you the maximum penalties and the mandatory minimum
11  penalties that must be imposed.
12        On Count One, the lesser-included offense carries a
13  maximum penalty of 20 years' incarceration;
14        Count Two carries a maximum penalty of life
15  imprisonment;
16        Count Three carries a maximum penalty of 10 years'
17  imprisonment.
18        With respect to Count Two, there is a mandatory
19  minimum period of incarceration of five years that must be
20  imposed.  And because these crimes are as serious as they are,
21  probation is not an option at sentencing.
22        The maximum fine that can be imposed on Count One is
23  $1 million, and the maximum fines for Counts Two and Three are
24  $250,000 each.
25        There's a maximum period of supervised release that
                    UNITED STATES DISTRICT COURT

can be imposed of life, and there's a mandatory minimum period

of supervised release of three years that the Court must

impose, that it impose supervised release.

If, after you are incarcerated, you are on supervised

release and you violate the terms of your supervised release,

then you could be sent back to prison for up to five years.

The Court can also order and will order at sentencing

forfeiture of both the Smith & Wesson firearm, as well as

$10,185.

And, finally, the Court must and will impose a special

assessment, $100 on each count, at the time of sentencing and,

in your case, that would be $300.  Do you understand these

maximum penalties?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Now, subject to these maximum penalties,

your sentence is going to be decided by a combination of the

Court's --

[Mr. Hayes consulted with the defendant.  ]

MR. HAYES:  Sorry, Your Honor.  There was just one of

the charges that Mr. Jiminez had asked me about.  What's

important for Mr. Jiminez is that he does not, frankly, give

the Court the wrong impression.

So what he's concerned about was he did not want the

Court to think that he was using that gun actively to promote

drug trafficking.  So, literally, that's what he -- he

UNITED STATES DISTRICT COURT

1   questioned me about.  He didn't want the Court to see that, to

2   think of him as someone of that nature.  He understands that it

3   can meet the elements, based on what Mr. Pierpont indicated and

4   the Court indicated, but he wanted the Court to know that.

5          THE COURT:  Well, Mr. Jiminez, I know very little

6   about you because this is the first time we're meeting.  I'm

7   going to know a lot more about you at the time of sentencing.

8          Mr. Hayes and the probation office are going to

9   provide the Court with a much better picture of who you are as

10  a person, and so I don't want you to be worried that I'm making

11  any assumptions or drawing any conclusions here today.  My job

12  today is to make sure that you are -- if you plead guilty, that

13  you're doing so knowingly and voluntarily, and that there is a

14  factual basis for the charges, and everything else I'll pretty

15  much leave until the time of sentencing.

16         THE DEFENDANT:  That makes me feel much more at peace.

17         THE COURT:  All right.  So let's talk about

18  sentencing.

19         The Court is going to first figure out what the

20  sentencing guidelines are in your case.  The sentencing

21  guidelines require the Court to consider many, many different

22  factors about the offender; that's you, the crime itself, and a

23  number of other factors.  And once all of those considerations

24  are undertaken, the Court will decide on what the guideline

25  range is.  It may or may not be the same as the one in the plea

                    UNITED STATES DISTRICT COURT

1  agreement and, ultimately, the decision will be mine to make.

2  I will have the assistance of your lawyer, the government's

3  lawyer, and the probation officer in making those

4  determinations.

5        After the Court figures out what the guideline range

6  is, the Court can consider reasons to depart upward and issue a

7  higher sentence, or to depart lower, and issue a lower sentence

8  than the guideline range.

9        In your particular case, there is a mandatory minimum

10  period of incarceration of 60 months.  So regardless of the

11  guideline range, I could not go below that.

12       After I consider the guideline range and reasons to

13  depart, then I look to the statute, which give me another list

14  of things to consider, and apply to your case in deciding what

15  an appropriate sentence is.

16       So it's a combination of both the guidelines and the

17  statutory factors, which will ultimately inform my decision.

18  Do you understand all of that?

19            THE DEFENDANT:  Yes.

20            THE COURT:  Do you have any questions for me about the

21  process by which your sentence will be determined?

22            THE DEFENDANT:  No, it's fine.

23            THE COURT:  Okay.  Now, turning back to your plea

24  agreement, attached to the plea agreement is a stipulation of

25  offense conduct and relevant conduct, and it is on page 12.

                    UNITED STATES DISTRICT COURT

1   Did you read this stipulation or have it read to you?

2            THE DEFENDANT:  It was read to me.

3            THE COURT:  And did you -- do you -- excuse me.  Do

4   you agree that it accurately reflects your conduct as it

5   relates to the charges to which you intend to plead guilty?

6            THE DEFENDANT:  Yes, ma'am.

7            THE COURT:  Mr. Pierpont, if you would like to make an

8   additional record of the facts the government believes it can

9   prove beyond the stipulation, I'll give you an opportunity to

10  do that.  I will indicate that I think the stipulations

11  provides a factual basis for the charges for which Mr. Jiminez

12  intends to tender pleas.

13           I would also ask you to place on the record the

14  evidence the government would offer, were the case to proceed

15  to trial.

16           MR. PIERPONT:  Yes, Your Honor.

17           So with respect to the stipulation itself, I will

18  provide any additional facts.

19           In term of -- in terms of how it would be that the

20  government would prove these facts at trial, such that they

21  satisfy the elements that we talked about before, there would

22  be testimony from agents who executed a search warrant on or

23  about September 20th, 2018 at Mr. Jiminez's residence on

24  Bronsan Street in Waterbury, Connecticut.

25           And the testimony would be that, outside Mr. Jiminez's

                  UNITED STATES DISTRICT COURT

1   bedroom window, pushed up against the wall and hidden behind a

2   sink, a granite sink, was secreted a brown -- a black trash bag

3   and, in that trash bag, what we're talking about here today

4   would be the drugs and the guns.

5         Mr. Jiminez was asked about those items and admitted

6   they were his.  In fact, the testimony would be that, before

7   the agents had revealed to him what they found in that bag,

8   that he was aware of what those contents were and were [sic.]

9   talking to the agents about those.  And that would establish

10  the elements, vis-à-vis the possession with intent to

11  distribute fentanyl, as well as the unlawful possession of a

12  weapon in furtherance of the drug trafficking offense.  Again,

13  just to be explicit about it, the gun was found in the trash

14  bag pressed up against the bags, and the drugs that were also

15  in that trash bag.

16        The government would also introduce expert testimony

17  and lab reports that the substance that was found in that bag

18  was tested, and it tested positive for fentanyl to the quantity

19  that was discussed in the stipulation.

20        Mr. Jiminez described the substance as China White.

21  We would introduce expert testimony that China White means

22  fentanyl in this context.

23        And Mr. Jiminez told agents as well that he had

24  crossed into this country illegally and unlawfully from Mexico

25  approximately seven years ago, and he was a citizen of the

                    UNITED STATES DISTRICT COURT

30

1  Dominican Republic.  In fact, agents found a Dominican Republic

2  passport at his residence.

3          There would be testimony from HSI that would establish

4  that, in fact, Mr. Jiminez had no immigration status here in

5  this country and is, in fact, a citizen of the Dominican

6  Republic; therefore, establishing that he is unlawfully in the

7  country.

8          Finally, there would be -- an ATF agent would testify

9  regarding interstate analysis on the .38 caliber Smith & Wesson

10  that was found in the trash bag.  And he would testify that it

11  was, in fact, manufactured by Smith & Wesson in Springfield,

12  Massachusetts, thereby satisfying the interstate commerce --

13  the interstate aspect of the possession of a firearm offense.

14          Unless your -- Your Honor has any questions, that

15  would be the sum and substance of how the government would

16  prove the facts that are in the stipulation of offense conduct.

17          THE COURT:  Thank you.

18          Mr. Jiminez, you heard the prosecutor indicate what

19  the evidence would be.  Do you have any substantial

20  disagreement with what he said the evidence would show?

21          THE DEFENDANT:  No.

22          THE COURT:  So on September 20th, 2018, you were in

23  possession of 63.7 grams of fentanyl, as well as the Smith &

24  Wesson .38 caliber firearm?

25          THE DEFENDANT:  Yes.

                    UNITED STATES DISTRICT COURT

1          THE COURT:  And at that time you knew that you were in

2    this country illegally?

3          THE DEFENDANT:  Yes.

4          THE COURT:  And you knew, I take it, that distributing

5    fentanyl or possessing fentanyl with the intent to distribute

6    it was also illegal?

7          THE DEFENDANT:  I didn't know that it -- it was

8    fentanyl.

9          MR. PIERPONT:  Can I have just a moment, Your Honor?

10          THE COURT:  Yes.

11          [Mr. Pierpont consulted with Mr. Hayes.]

12          MR. HAYES:  And, I'm sorry, we probably both missed

13    this.

14          I -- Mr. Jiminez knew that he possessed a controlled

15    substance.  He did not know that it contained fentanyl at the

16    time.  So we -- we've agreed that that meets the element of

17    what would be Count One, possession with intent to distribute.

18    It says "fentanyl", but to distribute a controlled substance.

19          THE COURT:  Okay.  I think that I would ask that the

20    stipulation, just that the stipulation be changed, because it

21    does indicate that he is -- that he knowingly possessed on that

22    date fentanyl.

23          If you want to just put a controlled substance, which

24    turned out to be fentanyl, I'm okay with that.  I think it

25    satisfies the elements.

                     UNITED STATES DISTRICT COURT

1    MR. PIERPONT:  So, Your Honor, I want to make sure

2 that we're looking -- so the first sentence of the stipulation

3 I think.  It may be that we had an earlier draft.  I apologize

4 if that is the case.

5    The version that I think we sent more recently, two or

6 more days ago, on or about September 20th, 2018, defendant

7 knowingly possessed, with the intent to distribute, a

8 controlled substance, which I think that's what his knowledge

9 and intent is.  And it goes on to say the substance that the

10 defendant possessed contained a detectable amount of --

11    THE COURT:  I see.

12    MR. PIERPONT:  And so I think it captures that

13 accurately.

14    THE COURT:  I think it does.  I think it does.  You're

15 right, it does.  That was my misreading when I asked

16 Mr. Jiminez.

17    Okay.  So you understand though, Mr. Jiminez, that it

18 turned out that what it was you were distributing was, in fact,

19 fentanyl.  Do you understand that?

20    THE DEFENDANT:  Yes.

21    THE COURT:  Okay.  Mr. Hayes, I'm going to ask you and

22 Mr. Jiminez to please sign the stipulation of offense conduct

23 on page 12 of the plea agreement.

24    MR. HAYES:  Your Honor, the parties have executed

25 their signatures on the -- on the entire plea agreement.

        UNITED STATES DISTRICT COURT

33

1          THE COURT:  Thank you.  If you would hand it forward.

2          MR. HAYES:  Thank you.

3          THE COURT:  Preliminarily, the Court finds that the

4 plea agreement was knowingly, voluntarily, and intelligently

5 made, and it was executed in the Court's presence.

6          So let me ask you again, Mr. Jiminez.  Are you

7 pleading guilty today of your own free will?

8          THE DEFENDANT:  Yes, ma'am.

9          THE COURT:  And you're pleading guilty today

10 voluntarily because you are guilty?

11          THE DEFENDANT:  Yes, ma'am.

12          THE COURT:  Do you have any questions?

13          THE DEFENDANT:  No.  Thank you very much.

14          THE COURT:  Mr. Hayes, do you know of any reason I

15 should not accept your client's pleas?

16          MR. HAYES:  I do not, Your Honor.

17          THE COURT:  And would you have me inquire further?

18          MR. HAYES:  No, Your Honor.

19          THE COURT:  And is the government aware of any reason

20 why I should not accept the defendant's pleas, or would you

21 have me inquire further?

22          MR. PIERPONT:  No.  Nothing further, Your Honor.

23          The only thing I would ask is I know -- I suspect in a

24 moment that the Court is going to put him to the plea, and I

25 just want to make sure that, rather than have him plead to

                    UNITED STATES DISTRICT COURT

34

1    Count One, it's the lesser included count in Count One.

2                THE COURT:  All right.  Thank you.

3                Mr. Jiminez, would you like me to read the charges

4    against you, or would you waive the reading of the charges?

5                THE DEFENDANT:  It's fine.  Thank you very much.  I'm

6    already aware of the charges.

7                THE COURT:  That's a waiver?

8                MR. HAYES:  It is, Your Honor.

9                THE COURT:  All right.  Madam Clerk, if you would

10   please put the defendant to plea on the lesser-included offense

11   of Count One, Count Two, and Count Three of the indictment.

12               COURTROOM DEPUTY:  In the case of United States of

13   America vs. Daniel Jimenez, criminal number 3:19-CR-48-KAD, as

14   to the lesser-included offense contained in Count One of the

15   indictment charging you with a violation of Title 21, United

16   States Code, Sections 841(a)(1) and (b)1(c), what is your plea?

17               THE DEFENDANT:  Guilty.

18               COURTROOM DEPUTY:  As to Count Two of the indictment

19   charging you with a violation of Title 18, United States Code,

20   Section 924(c)(1) (a)1, what is your plea?

21               THE DEFENDANT:  Guilty.

22               COURTROOM DEPUTY:  As to Count Three of the

23   indictment, charging you with a violation of Title 18, United

24   States Code Section 922(g)5(a) and 924(a)(2), what is your

25   plea?

                    UNITED STATES DISTRICT COURT

1          THE DEFENDANT:  Guilty.

2          COURTROOM DEPUTY:  Your Honor, the defendant pleads

3    guilty to the lesser-included offense contained in Count One,

4    Counts Two and Three of the indictment.

5          THE COURT:  Thank you.

6          On the basis of the defendant's answers to the Court's

7    questions given under oath and on the record, the remarks of

8    the Assistant United States Attorney, the remarks of defense

9    counsel, the content of the plea agreement to include to the

10   stipulation of offense conduct, I find that the defendant is

11   competent to plead guilty, and he knows his right to a trial

12   and the other rights he waives by pleading guilty; that he

13   knows what the maximum possible sentence is, and what the

14   mandatory minimum sentence or minimum period of supervised

15   release is, as well as the role that the sentencing guidelines

16   will play in determining his sentence.

17         I further find that there's a factual basis for the

18   defendant's pleas of guilty, and that that plea has been

19   entered knowingly, voluntarily, and with the assistance of

20   capable counsel.

21         The Court, therefore, accepts the pleas, and a finding

22   of guilty shall enter to the charges for which we have entered.

23         The matter is referred to the United States Probation

24   Office for preparation of a Presentence Investigation Report.

25         Sentencing is scheduled for September 4th, 2019, at
                    UNITED STATES DISTRICT COURT

36

1   11:00 a.m.

2         The first disclosure of the Presentence Investigation

3  Report will be July 24th, 2019.

4         On or before August 7th, the parties are to submit

5  any objections, concerns, or corrections to the Presentence

6  Investigation Report.

7         On or before August 17th, the probation officer

8  shall submit the final Presentence Report and any addendum

9  thereto.

10        Mr. Hayes, I will ask for your sentencing memorandum

11  on August 21st and the government's on August 28th.

12        And, again, sentencing is scheduled for September

13  4th.

14        Mr. Jiminez, very shortly, in the next few days,

15  you're going to hear from the United States Probation Officer,

16  who is going to be gathering information in preparation for

17  sentencing.  I encourage you to cooperate in that process but,

18  of course, you should do so in consultation with Mr. Hayes.

19        I'm going to be taxed with the very difficult task of

20  deciding an appropriate sentence in this case.  I must find a

21  sentence that is adequate, but no longer than necessary, to

22  meet the goals of sentencing.  And it is my belief that, the

23  more information I have, the better informed my sentence --

24  your sentence will be.

25        Any questions for me, Mr. Jiminez, before we adjourn?

                UNITED STATES DISTRICT COURT

37

1          THE DEFENDANT:  No, thank you.

2          And I just would like to ask that the probation

3 officer comes with an interpreter.

4          THE COURT:  All right.  I'll ask that they be advised

5 in that regard.  I think that there has already been -- we'll

6 make sure that happens.

7          MR. HAYES:  That's correct.  I will make sure that

8 happens, Your Honor.

9          THE COURT:  Thank you.  All right.

10          And, Mr. Hayes, is there any request regarding bond?

11          MR. HAYES:  No, Your Honor.  Thank you.

12          THE COURT:  The Court then -- the order of detention

13 previously entered will remain in full force and effect,

14 pending sentencing.

15          Anything else we can do this morning?

16          MR. PIERPONT:  Not from the government, Your Honor.

17          MR. HAYES:  No, Your Honor.  Thank you.

18          THE COURT:  All right.  We will see you at the end of

19 September, Mr. Jiminez.

20          We're in recess.

21          COURTROOM DEPUTY:  All rise.  The Honorable United

22 States District Court now stands in recess.

23               [Proceedings concluded at 11:56 a.m.]

24

25

                    UNITED STATES DISTRICT COURT

38

REPORTER'S CERTIFICATE

1
2
3          I, Traci D. Walker, Official Court Reporter, do
4  hereby certify:
5          That I reported on the Stenograph machine the
6  proceedings held in open court on June 12th, 2019, in the
7  matter of United States of America versus Daniel Jiminez De La
8  Cruz, Case Number: 3:19-CR-00048; that said proceedings in
9  connection with the hearing were reduced to typewritten form by
10  me; and that the foregoing transcript (Pages 1-37)
11  is a true and accurate record of the proceedings.
12          This 7th day of February, 2020.
13
14
15
16          _____
17          /s/ Traci D. Walker, RMR-CRR-CRC
           Official Court Reporter
18
19
20
21
22
23
24
25